# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beydi T. Yao,                                    :
                                                 :
                        Petitioner               :
                                                 :
            v.                                   :    No. 278 C.D. 2015
                                                 :
Unemployment Compensation                        :    Submitted:  August 28, 2015
Board of Review,                                 :
                                                 :
                        Respondent               :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**[1]                   **FILED:  February 10, 2016**

Beydi T. Yao (Claimant) petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) that affirmed the UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law[2] (Law) because he engaged in willful

---

[1] This matter was reassigned to the authoring judge on October 21, 2015.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work").

misconduct related to his work. On appeal, Claimant argues that the Board erred in finding him ineligible for UC benefits because, under the circumstances, he did not violate Employer's rules and he had good cause for his actions and, therefore, they did not rise to the level of willful misconduct. Discerning no error, we affirm.

Claimant worked for North Philadelphia Health System (Employer) as a full-time Security Officer from August 11, 2008 until January 29, 2014 when he was discharged for, *inter alia*, violating Employer's written rule "prohibiting negligence[,] which include[s] mistreatment or abuse of patients [(Work Rule)]." (Referee Decision, Findings of Fact (FOF) ¶¶ 1, 22.) Claimant filed a claim for UC benefits with a local UC Service Center, which was denied.[3] Claimant appealed, and the matter was assigned to a Referee. The Referee held a hearing at which Employer presented the testimony of its Director of Security and Transportation (Director), documentary evidence, and a surveillance video of the incident that led to Claimant's discharge. Claimant testified on his own behalf.

Claimant's job duties required him to provide security for Employer's premises, a medical facility with an emergency room. While working on January 26, 2014, Claimant received a call for assistance with a disruptive patient (Patient) in the emergency room from another security officer. Patient was "involved in a verbal altercation with a female employee working as the patient registrar," in which "[P]atient . . . called her a 'b***h.'" (FOF ¶¶ 10-12.) Claimant advised Patient that, because of his abusive language, he would have to leave Employer's premises. Claimant requested the other security guard to call the police. Recognizing Patient from a few weeks before when Patient "became violent and

---

[3] Claimant's application was initially granted, but the UC authorities issued a Notice of Redetermination denying the claim for UC benefits.

had to be restrained by . . . Claimant and three other security guards," Claimant continued to request Patient to leave the premises. (FOF ¶¶ 14-15.) Patient "refused to leave . . . Employer's premises on several occasions and[,] at one point[,] threw a bag of ice, which he had been holding, onto the ground." (FOF ¶ 16.) After "pac[ing] back and forth in front of the entrance and eventually retriev[ing] his coat from a chair," Patient moved towards the entrance. (FOF ¶ 17.) "As . . . [Patient] was near the entrance, . . . Claimant pushed [Patient] out the door and [Patient] fell onto the ground." (FOF ¶ 18.) The police arrived shortly thereafter to take Patient away.

Employer received a complaint regarding Claimant's actions the next day. Director investigated the incident by reviewing the surveillance video and interviewing Claimant and other staff members. After his investigation, Director "believed that . . . Claimant's actions were an excessive use of force and in violation of" Employer's Work Rule, which "prohibit[s] negligence which . . . Employer defines, in part, as mistreatment, neglect or abuse of patients." (FOF ¶¶ 3, 21.) A violation of this rule is grounds for immediate discharge. (FOF ¶ 3.) Employer gives all new employees a copy of its work rules, and Claimant was aware, or should have been aware, of the Work Rule. Director also concluded that Claimant's actions also violated Employer's policy regarding violence intervention and de-escalation (Policy) that provides that "staff is to avoid physical confrontation and . . . maintain [the] individual's autonomy," on which Claimant received training when he was hired and, again, in December 2011.[4] (FOF ¶¶ 6-8,

---

[4] Employer considers this training particularly useful because, in an emergency room setting, patients are often upset due to their injuries or ailments and can feel angry and frustrated that they are not being seen right away. (Hr'g Tr. at 35, R. Item 11.)

3

21.) Employer discharged Claimant on January 29, 2014 for violating the Work Rule and the Policy.[5] (FOF ¶ 22, Referee Decision at 3.)

Based on these facts, the Referee concluded that Employer met its burden of proving: the existence of the Work Rule and Policy; that Claimant was, or should have been, aware thereof; and that Claimant's actions during the January 26, 2014 incident violated the Work Rule and Policy. The Referee then considered Claimant's reasons for his actions and, while sympathetic to Claimant and the circumstances he faced that day, concluded that Claimant did not establish that he had no alternative means for addressing the situation but to use physical force. As support for this conclusion, the Referee pointed to the facts that the police had been called and were on their way, another security officer was there to assist Claimant in removing Patient from the emergency room waiting room if needed, and that there was no indication of "imminent threat to . . . Claimant or others to justify . . . Claimant using physical force to remove [Patient] from the Employer's premises." (Referee Decision at 3.) Claimant appealed to the Board, which, after reviewing the record, held that the Referee's Decision was proper under the Law. Accordingly, the Board adopted the Referee's findings and conclusions as its own,

---

[5] Although Employer did not expressly refer to the Policy in Claimant's disciplinary action form or indicate that Claimant was discharged for violating the Policy, that form does describe the incident and indicates that Claimant "did not follow Security procedures and excessive force was used." (Employer Separation Information, Disciplinary Action Form at 1, R. Item 3.)

4

incorporated them into its Order, and affirmed the Referee's Decision.[6] Claimant now petitions this Court for review.[7]

On appeal, Claimant argues that his actions did not rise to the level of willful misconduct given the circumstances and the Board erred in concluding otherwise. Claimant asserts that his conduct was not unreasonable where Patient was refusing to leave, even after putting on his coat, despite Claimant's repeated requests that he do so. Claimant further argues that he did not deliberately violate any of Employer's rules or standards of behavior that Employer had a right to expect from him because, under the Policy, he was permitted to use force when necessary, such as where a person becomes violent. Here, Claimant asserts, Patient had a history of being violent, had been verbally abusive to an employee, and was refusing to leave. According to Claimant, he was justified in believing that Patient could become violent again and his forcing Patient out the door was a reasonable use of force that got Patient away from other patients and employees.

Section 402(e) of the Law states that an employee is ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . ." 43 P.S. § 802(e). This Court has defined willful misconduct as:

> (1) the wanton and willful disregard of the employer's interests, (2) the deliberate violation of rules, (3) the disregard of standards of

---

[6] Claimant requested that the Board reconsider its determination, which the Board granted. However, after reviewing the record and relevant law, the Board reinstated its initial decision affirming the Referee's Decision.

[7] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014).

behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

Guthrie v. Unemployment Compensation Board of Review, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation." Caterpillar, Inc. v. Unemployment Compensation Board of Review, 703 A.2d 452, 456 (Pa. 1997). A claimant must also be "made aware of the existence of the work rule." Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). If the employer satisfies its burden, the burden shifts to the claimant to show that he or she had good cause for the conduct. McKeesport Hospital v. Unemployment Compensation Board of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." Docherty v. Unemployment Compensation Board of Review, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). If a claimant had "good cause for the conduct, it was not willful misconduct." Rossi v. Unemployment Compensation Board of Review, 676 A.2d 194, 198 (Pa. 1996). Whether a claimant's conduct rises to the level of willful misconduct is a question of law reviewable by this Court. Docherty, 898 A.2d at 1209.

Here, Claimant does not challenge the existence of the Work Rule or Policy or assert that he was not aware of the Work Rule or Policy. In fact, Claimant relies on the Policy as a means of justifying his use of force against Patient. The Work Rule prohibits the mistreatment or abuse of patients and provides that a violation can lead to immediate termination. (FOF ¶ 3.) The Policy "provides that staff is to

avoid confrontation and to maintain [the] individual's autonomy" and the grounds for when an employee may use force, such as when the individual is violent. (FOF ¶¶ 7-8; Hr'g Tr. at 14, R. Item 11; Policy, Employer Ex. E1.) It is undisputed that Claimant pushed Patient out the door and that Patient fell to the ground. The dispute is whether Patient was violent and/or was leaving the emergency room when this push occurred, such that Claimant used excessive force in contravention of Employer's rules. After reviewing the record, we find no error in the conclusion that Claimant violated Employer's rules.

Here, Director testified that the video showed Patient putting on his coat and, while "there was some verbal back-and-forth" and gesturing, Patient was at the entrance when Claimant pushed Patient out the door causing him to fall to the ground. (Hr'g Tr. at 16, 18-19, 29-31.) Director explained that there was no indication in the interviews with other staff members that Patient had been physically violent and the video did not show Patient being violent, hostile, or threatening toward Claimant or anyone else in the emergency room waiting room. Director believed that Claimant used excessive force because Patient was leaving Employer's premises and had his back turned to Claimant when Claimant pushed Patient out the door. Our review of the video reveals that Director's description of the incident is accurate and Patient was at the entrance of Employer's premises with his back to Claimant when Claimant pushed him from behind, causing him to go through the door and fall to the ground. Indeed, one angle in the video shows Claimant pushing Patient out the door with enough effort that Claimant went out the door with Patient.

Although Claimant asserted in his testimony that Patient was violent and was not leaving the emergency room when he pushed Patient, (Hr'g Tr. at 24-25),

the Board found that Patient was not an immediate threat and was near the entrance when Claimant pushed him outside. (FOF ¶ 18; Referee Decision at 3.) "As the ultimate factfinder, the Board determines the credibility of witnesses and the weight to be assigned to the evidence." Tapco, Inc. v. Unemployment Compensation Board of Review, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). The fact "that [a party] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." Id. at 1109. Based on the credited evidence and the inferences that can be logically and reasonably drawn therefrom, which we must examine in the light most favorable to the party that prevailed before the Board, Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977), we find substantial evidence to support the Board's factual findings. Those findings support the Board's decision that Claimant's use of force against Patient was excessive and violated Employer's Work Rule against the mistreatment and abuse of patients. Accordingly, the burden shifted to Claimant to demonstrate that he had good cause for his actions. McKeesport Hospital, 625 A.2d at 114.

Claimant argues that, given his past experience with Patient and Patient's aggressive and uncooperative behavior on January 26, 2014, he had reason to believe that Patient was a threat. Therefore, Claimant argues his actions in physically removing Patient were reasonable and justified and did not constitute willful misconduct. A claimant may use reasonable retaliatory force if the claimant reasonably believes that he is in danger of imminent bodily harm and being assaulted. Sun Oil Company v. Unemployment Compensation Board of Review, 408 A.2d 1169, 1171 (Pa. Cmwlth. 1979). However, our Court has held the use of excessive force by security officials can constitute willful misconduct.

8

Yost v. Unemployment Compensation Board of Review, 42 A.3d 1158, 1165 (Pa. Cmwlth. 2012) (holding that a police officer committed willful misconduct by using excessive force against a suspect). Moreover, where a claimant has alternate means of addressing the concern other than by violating the work rule, the claimant does not have good cause for violating the work rule. Arbster v. Unemployment Compensation Board of Review, 690 A.2d 805, 810 (Pa. Cmwlth. 1997).

Here, Employer has a Policy regarding the use of force and Claimant agreed that, under this Policy, he was trained to escort patients out the door without pushing them and to use force only when necessary, such as where a patient is violent. (Hr'g Tr. at 34.) Although Claimant testified that Patient was violent on that day and repeatedly refused to leave the emergency room, (Hr'g Tr. at 25-26, 33-34), a review of the video does not support Claimant's testimony that Patient was violent during the incident.[8] Patient was "boisterous," (Referee Decision at 4), threw a bag of ice on the ground, and gestured at Claimant and the other security officer in disapproval of being asked to leave. However, the police had been called to Employer's premises to remove Patient and a second security officer was present to assist in physically removing Patient *if* he became violent or a threat in the interim. Despite knowing these facts and about Employer's Work Rule and Policy, Claimant made the conscious decision to physically force Patient through the entrance with sufficient effort that Patient fell to the ground. Thus, although we sympathize with Claimant, there were alternative means for Claimant to handle Patient had he become violent or a threat other than by using physical force.

---

[8] To the extent Claimant asserts that Patient used abusive language, "abusive or . . . personally offensive [language], does not justify an assault and battery." Sun Oil, 408 A.2d at 1170.

9

Furthermore, Patient had put on his coat, had his back to Claimant, and was near the entrance door when Claimant pushed him, causing Patient to fall to the ground outside. The Board concluded that Claimant did not have good cause for his actions because "Claimant failed to establish that the patient was an imminent threat to the Claimant or others." (Referee's Decision at 3-4.) This conclusion is supported by the record evidence, and we agree that, absent an imminent threat or evidence that Patient was acting violently, Claimant did not meet his burden of proving that he had good cause for pushing Patient out the emergency room door.

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beydi T. Yao,                               :
                                            :
                    Petitioner              :
                                            :
          v.                                :     No. 278 C.D. 2015
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                                            :
                    Respondent              :

# **O R D E R**

**NOW**, February 10, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beydi T. Yao,                              :
                                           : No. 278 C.D. 2015
                      Petitioner           : Submitted: August 28, 2015
                                           :
             v.                            :
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                                           :
                      Respondent           :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  February 10, 2016


          Because Employer failed to prove that Claimant intentionally or deliberately violated Employer's work rule, I would conclude that Claimant did not engage in willful misconduct under section 402(e) of the Unemployment Compensation Law (Law).[1]  Accordingly, I respectfully dissent.

          In proving willful misconduct, an employer must establish that the employee's actions were intentional or deliberate.  *Tongel v. Unemployment Compensation Board of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985).  "[A]n

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

inadvertent violation of an employer's rule may not constitute willful misconduct." *Eshbach v. Unemployment Compensation Board of Review*, 855 A.2d 943, 947 (Pa. Cmwlth. 2004) (*en banc*). To determine whether willful misconduct occurred, consideration must be given to "'all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives.'" *Id.* at 947-48 (citation omitted).

The record reflects that Employer's policy permits security officers to use force when necessary. Here, Claimant knew Patient due to a prior incident wherein Patient was violent and needed four security officers to restrain him. During the incident at issue, Patient was verbally abusive to a staff member, threw a pen at an employee, threw a bag of ice, and refused to follow Claimant's directive to leave. Claimant admits that he pushed Patient out the door but claims that he did so because he was concerned for the safety of other employees and patients.

The Board did not find that Claimant intentionally violated Employer's work rule, and there is no evidence of record to support such a finding. Because Claimant had a recent violent encounter with Patient and Patient again exhibited aggressive behavior,[2] Claimant, in performing his duties, which required him to protect Employer's premises and its occupants, exercised his best judgment and pushed Patient out the door. Even though Employer later determined that Claimant's response was improper, Claimant cannot be denied UC benefits without a finding of

---

[2] In addition to calling a nurse a b***h, throwing a pen at an employee, and throwing a bag of ice, the referee also stated that Patient gestured in an aggressive manor with his hands. (Ref.'s Decision at 2.)

an intentional or deliberate violation of a work rule. Claimant's failure to make a proper decision under the circumstances may support disciplinary action or termination, but it does not rise to the level of willful misconduct. *See, e.g., Assise v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 2507 C.D. 2011, filed January 4, 2013), slip op. at 13.[3] "To the contrary, the evidence of record suggests only that Claimant attempted to do his duty under difficult and uncertain circumstances, but made bad decisions." *Id.,* slip op. at 14.

Although Claimant's judgment may have been questionable, absent a finding that Claimant intentionally or deliberately violated Employer's work rule, I cannot agree with the majority that Claimant engaged in willful misconduct under section 402(e) of the Law. For these reasons, I would reverse the Board's order.

ROCHELLE S. FRIEDMAN, Senior Judge

---

[3] An unreported opinion is not binding precedent but may be cited for its persuasive value. *See* Section 414 of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414. In *Assise*, a police officer, who admittedly used excessive force in meting out knee strikes where it was not necessary, was found to be eligible for UC benefits because he did not willfully violate the employer's work rule. Slip op. at 11, 14.