Mary M. ESHBACH, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 9, 2004.
Decided Aug. 5, 2004.

Laurie L. Baughman, Harrisburg, for petitioner.

Heather E. Conlon, Harrisburg, for respondent.

BEFORE: GARDNER COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY Judge FRIEDMAN.[1]

Mary M. Eshbach (Claimant) appeals from an order of the Unemployment Compensation Board of Review (UCBR), which affirmed as modified the decision of a ref-

eree and denied Claimant unemployment compensation benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[2]  We reverse.

Dart Container Corporation (Employer) employed Claimant as a packer inspector from March 2, 1998, until February 28, 2002, when Employer discharged Claimant for violating an Employer work rule by failing to provide notice of her absence for three consecutive days.  The local UC Service Center denied Claimant's application for benefits, and, following Claimant's appeal, a hearing was held before a referee.

At the hearing, Claimant testified that she was aware of Employer's absenteeism policy, but she did not think it applied to her because she believed that, as of February 4, 2002, her absence from work was covered under an approved family medical leave.  In this regard, Claimant testified as follows.  Sometime in December 2001, she had a conversation with Becky Houser, Employer's human resource coordinator, during which Claimant explained that her seventeen-year-old daughter was due to give birth sometime in February.  Claimant asked Houser about taking family medical leave to care for her daughter after the delivery.  Houser replied that Claimant would be eligible to take family medical leave, and Houser said that Claimant did not need to provide documentation or fill out any forms beforehand but only had to contact Employer after the baby was born.  Claimant told Houser that she expected to take a couple of weeks off after the delivery but might need to be

---

1. This case was reassigned to the opinion writer on June 9, 2004.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).  Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to willful misconduct connected

with his or her work.  In ruling under this section of the Law, the UCBR modified the decision of the referee, who concluded that Claimant was ineligible for benefits under the voluntary quit provisions of section 402(b) of the Law, 43 P.S. § 802(b).  Prior to the hearing, the parties were on notice that both sections of the Law would be considered.

home for a longer period if there were any complications. Before concluding the conversation, Houser informed Claimant that she needed a doctor's excuse for her leave and that Claimant had to provide the excuse upon her return to work. Employer did not give Claimant any additional information about family medical leave. (N.T. at 9–10, 18–19.)

On January 28, 2002, Claimant called Employer to say that she would not be at work that week because her daughter was sick. Claimant's daughter gave birth on Saturday, February 2, 2002. Claimant called to inform Employer of the birth on Monday, February 4, 2002, and, thereafter, Claimant believed that she was on family medical leave pursuant to her prior discussion with Houser. After the delivery, Claimant's daughter suffered serious complications, and Claimant called work several times to inform Employer that she was not sure when she would be back.[3] (N.T. at 10–11.) During the third week in February, Houser called Claimant and asked her when she would be returning to work. Claimant responded that she wanted to come back to work but that she still needed to get documentation from the doctor. (N.T. at 11–12.) Claimant also told Houser that she would be able to return to work on February 25th if she had obtained the doctor's excuse. (N.T. at 20.)

On February 25th, Claimant called Houser to say that she still was trying to get the excuse and, if she got it, she would be in on February 26th. (N.T. at 21.) However, after two unsuccessful attempts, Claimant decided to wait and ask for the excuse at her daughter's postpartum checkup, scheduled for March 25, 2002.[4]

Claimant did not think that she needed to relate this decision to Employer because she believed that she still was on family medical leave, and she already had explained that she would return to work only when she was able to get the required medical documentation. (N.T. at 13–14.) However, on March 21, 2002, Employer sent Claimant a document regarding her options to continue certain benefits, and Claimant noticed that it contained a February 28, 2002, termination date. Because Claimant believed she was on family medical leave and still employed, Claimant called Employer and made inquiries. She was told that she had been terminated for violating Employer's three-day no-call/no-show rule. (N.T. at 14–17.)

Eric Horn, Employer's human resources supervisor, testified at the hearing regarding Employer's family medical leave policy. Horn explained that before taking family medical leave, an employee must complete certain paperwork. He stated that the employee is given a form to fill out, as well as a physician statement that must be completed by the employee's doctor and returned to Employer. Horn testified that Employer never gave this paperwork to Claimant and, therefore, Employer never received the completed forms from Claimant. (N.T. at 23.)

Horn also testified that he was aware that Claimant's daughter was having a baby and that Employer regarded Claimant as having reported off work from January 28, 2002, through the first weeks of February for that reason. Horn stated that, because Employer was aware of Claimant's situation, Claimant was not discharged when she failed to come in or call

---

**3.** According to Claimant, she spoke to the operator. "I told her I was on leave, I don't really have to call in, but I thought I'd call in and check in and still let them know I'm off." (N.T. at 11.)

**4.** Ultimately, Claimant obtained the doctor's note approving her return to work on April 1, 2002. (N.T. at 14; O.R. at C–1.)

on February 18th, 19th and 20th. Instead, Houser called Claimant to ask about her plans to return to work. According to Horn, Claimant stated that she hoped to be in to work on February 25th; however, on that date, Claimant called to say that she could not come in but would report to work the next day. Horn stated that Employer, therefore, expected Claimant back at work on February 26, 2002, and when she did not come in or call on February 26th, 27th and 28th, Employer considered Claimant to have abandoned her job. During cross-examination, Horn admitted that, when an employee asks about family medical leave, an employer is required by the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654, to provide the employee with written information as to the employee's rights and obligations under the FMLA. Horn stated that, as far as he knew, Employer never provided Claimant with any such information. (N.T. at 23–24.)

In her testimony, Houser confirmed that, in December, Claimant reported that her daughter was expecting a baby, and Claimant asked if she could have some time off after the birth. Houser also acknowledged that, on February 4, 2002, Claimant left a message on Houser's answering machine informing Houser that the baby had been born. Houser testified that employees typically are permitted to be off for one or two weeks after the birth of a baby; therefore, Houser waited until February 20, 2002, to call Claimant and inquire about her plans. Houser stated that she did not speak to Claimant directly but left her a message, and when Claimant called back, she left the message that she would be back to work on February 26th. (N.T. at 24–25.)

Houser testified that Claimant never formally requested leave under the FMLA; however, Houser conceded that

Claimant may have believed that all she needed to do to qualify for family medical leave was to inform Employer about the birth and to provide a doctor's note upon her return to work. (N.T. at 25–26.) Houser also agreed that the notice provisions of the FMLA require an employer to respond to an employee's inquiries about family medical leave by informing the employee of her rights and obligations under the FMLA. Although Houser acknowledged that Claimant asked about taking family medical leave, Houser admitted that she did not provide Claimant with any specific written information about the FMLA, and she did not give Claimant any of the paperwork needed to obtain FMLA certification. (N.T. at 26–27.)

Following the hearing, the referee issued a decision affirming the determination of the UC Service Center. Claimant appealed to the UCBR, which made the following relevant findings of fact.

3. The claimant had questioned the employer on or around December 2001 regarding the use of family medical leave. She understood that she was to contact the employer if this was to be used.

4. On January 26, 2002, the claimant was absent due to her daughter's pregnancy, and properly reported off from work. The claimant maintained casual contact with the employer through February 18, 2002.

5. The claimant did not formerly [sic] request family medical leave.

6. On February 20, 2002, the employer contacted the claimant because she had not called off for February 18th, 19th or 20th, and was concerned about her intentions.

7. The claimant indicated that she had gotten her ex-husband to care for their daughter and that she would be able to return to work by February 25, 2002, as

long as she was able to get a medical excuse.

8. The claimant called off on February 25, 2002, but indicated that she would be into [sic] work the next day the 26th.

9. The claimant was scheduled to work February 26th 27th and 28th, 2002.

10. The claimant never reported for work on these days and the employer never heard from her again until after it had sent her notice on March 21, 2002, of her discharge as of February 28, 2002.

11. The claimant was discharged for her three consecutive no call no shows.

(UCBR's Findings of Fact, Nos. 3—11.)

Based on these findings, the UCBR concluded that Claimant's actions rose to the level of willful misconduct. In reaching this conclusion, the UCBR did not dispute that *Claimant believed herself absent under the FMLA.* However, the UCBR concluded that this belief was not reasonable because Claimant never completed any documentation or made a formal request for the leave. The UCBR also determined that, in any case, Claimant knew she was supposed to be back at work by February 26, 2002, but she did not contact Employer until March 21, 2002. Rejecting Claimant's assertion that she thought she did not have to contact Employer again until she was able to get medical documentation, the UCBR concluded that Claimant failed to show good cause for her actions and, therefore, was ineligible for benefits. Claimant now appeals to this Court, arguing that the UCBR erred in denying her benefits based on willful misconduct.[5]

■■■ For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct. *Navickas v. Unemployment Compensation Board of Review,* 567 Pa. 298, 787 A.2d 284 (2001). When a charge of willful misconduct is based on the violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule and the fact of its violation. *Daniels v. Unemployment Compensation Board of Review,* 755 A.2d 729 (Pa. Cmwlth.2000). The employer also must present evidence that the employee *deliberately* violated the rule.[6] *Tongel v. Unemployment Compensation Board of Review,* 93 Pa.Cmwlth. 524, 501 A.2d 716 (1985). This court has determined that an inadvertent violation of an employer's rule may not constitute willful misconduct. *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review,* 54 Pa.Cmwlth. 6, 419 A.2d 238 (1980). Thus, a determination of what amounts to

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Whether an employee's actions constitute willful misconduct is a question of law subject to plenary review by this court. *Zimmerman v. Unemployment Compensation Board of Review,* 836 A.2d 1074 (Pa.Cmwlth.2003).

6. Willful misconduct has been defined as conduct that represents a wanton or willful disregard of an employer's interests, deliberate violation of the employer's rules, a disregard of standards of behavior that the employer can rightfully expect from its employees, or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Navickas.* We have previously explained that, through the use of such words as "wanton or willful," "deliberate" and "intentional disregard," these definitions all include an element indicating a consciousness of wrongdoing on the part of the employee. *MacFarlane v. Unemployment Compensation Board of Review,* 12 Pa. Cmwlth. 550, 317 A.2d 324 (1974).

willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Navickas,* 567 Pa. at 304, 787 A.2d 284 (quoting *Rebel v. Unemployment Compensation Board of Review,* 555 Pa. 114, 723 A.2d 156, 158 (1998)). Where the action of the employee is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct because it cannot properly be charged as a willful disregard of the employer's intent or rules or of the standard of conduct which the employer has a right to expect. *Williams v. Unemployment Compensation Board of Review,* 32 Pa.Cmwlth. 641, 380 A.2d 932 (1977).

■ Claimant here does not question the existence or reasonableness of Employer's absenteeism policy, nor does she deny that she failed to call in to report her absence on February 26th, 27th and 28th. However, Claimant contends that she reasonably believed that Employer's absenteeism policy did not apply to her because her absence was protected under the FMLA. Claimant argues that the UCBR erred in holding otherwise and, thus, the UCBR erred in concluding that her actions rose to the level of *willful* misconduct. We agree.[7]

■ The FMLA grants an eligible employee the right to twelve workweeks of leave over any period of twelve months in order to care for the employee's child, spouse or parent, if the child, spouse or parent has a serious health condition.[8] 29

U.S.C. § 2612(a)(1)(C). An employee taking leave under the FMLA must provide at least verbal notice to the employer sufficient to make the employer aware that the employee needs FMLA-qualifying leave. 29 C.F.R. § 825.302(c). The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may state only that leave is needed for an expected birth or adoption, for example. *Id.* If it is necessary to have more information about whether FMLA leave is being sought by the employee, the *employer* must inquire further of the employee and obtain the necessary details of the leave to be taken. *Id.*

Pursuant to 29 C.F.R. § 825.301(b)(1), an employer is required to provide an employee seeking leave under the FMLA with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet those obligations. The notice must include, *inter alia,* any requirement for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so. 29 C.F.R. § 825.301(b)(1)(ii). The notice may also include any requirement that the employee provide periodic reports of the employee's status and intent to return to work. 29 C.F.R. § 825.301(b)(2). This mandatory notice must be provided to the employee "within a reasonable time after notice of the need for leave is given by the employee—within one or two business days if feasible." 29 C.F.R. § 825.301(c).

---

7. Claimant contends that, while she provided Employer with sufficient notice of her need to take a leave of absence that would qualify as a leave protected by the FMLA, Employer failed to meet its obligation to provide her with written notice of her rights and responsibilities under the FMLA. Thus, Claimant also argues that she cannot be denied benefits based on willful misconduct because Employer fired her in violation of the FMLA. Al-

though we agree with Claimant that Employer failed to comply with its notice obligations under the FMLA, we base our determination on Claimant's alternate argument.

8. Assuming that Claimant had taken no other leave under the FMLA during the prior twelve month period, her leave would not end until approximately April 21, 2002.

The undisputed evidence presented at the referee's hearing established that Claimant went to Employer to talk about needing time off to care for her daughter after her daughter gave birth. Further, Employer's own witness confirmed that she told Claimant she was eligible for family medical leave and instructed Claimant to contact Employer when the baby was born, i.e., when Claimant wanted to begin her leave. (*See* UCBR's Findings of Fact, No. 3.) The evidence also established that Claimant contacted Employer on February 4, 2002, to advise Employer that her daughter had had the baby. Consequently, under 29 C.F.R. § 825.302(c), Claimant provided sufficient information to make Employer aware that Claimant needed leave which would qualify as leave under the FMLA. Employer then was required to provide Claimant with written notice of her rights and obligations under the FMLA. 29 C.F.R. § 825.301(b)(1). However, Employer's witnesses acknowledged that Employer failed to provide Claimant with any written information regarding the FMLA and did not supply Claimant with the necessary paperwork.[9] Under these circumstances, we must conclude that Claimant's belief that she was on leave under the FMLA as of February 4, 2002, was reasonable, well-founded and reached in good faith. The UCBR's contrary conclusion, based on Claimant's failure to formally request FMLA leave or to complete related forms, is not supported by the totality of the facts.

Employer argues that the question of whether Claimant was on FMLA leave is irrelevant because, even if Claimant was on a leave of absence, that leave would have ended after February 25, 2002. Employer contends that Claimant was discharged for failing to show up for work and failing to contact Employer on February 26, 27 and 28, 2002, *subsequent* to any leave under the FMLA. Therefore, Employer maintains that Claimant's actions were in clear violation of Employer's three-day "no show/no call" policy, a policy of which Claimant was aware. We reject this argument.

As stated, Claimant provided Employer with information sufficient to trigger Employer's obligation to provide Claimant with information concerning her rights and responsibilities under the FMLA, including Claimant's obligations regarding ending that leave. The clear provisions of the FMLA put the burden on the *employer* to ensure an adequate understanding between the employer and the employee regarding rights and obligations under the FMLA, 29 C.F.R. § 825.302(c), and Employer admitted that it made no attempt to provide such information to Claimant. To the contrary, Employer merely told Claimant to report to Employer when her daughter gave birth and to have a doctor's excuse before returning to her employment. We must conclude that, absent any other instructions, Claimant reasonably understood that the twelve weeks of leave guaranteed to her under the FMLA would end *only* when she returned to work with a doctor's excuse to give to Employer and, thus, Claimant understandably believed that she remained under the protection of the FMLA even after February 25th.[10]

9. At the hearing before the referee, Employer's witnesses made the somewhat circular argument that Claimant was not on FMLA leave because she did not fill out the appropriate forms even though she was not given written information about the FMLA nor was she provided with the necessary paperwork.

10. Employer contends that there was no evidence presented, and no reason to believe, that it would not have let Claimant return to work without a medical certification. However, Houser testified that she informed Claimant in December, 2001, that she needed continuing medical documentation for time

We reiterate that the employer has the burden of proving that the discharged employee was guilty of willful misconduct. Where Employer discharged Claimant for failing to report absences that, under the circumstances, Claimant reasonably believed were protected under the FMLA, Employer has not demonstrated a conscious wrongdoing on the part of Claimant. Accordingly, because the UCBR erred in concluding that Claimant's action rose to the level of willful misconduct, we reverse the order of the UCBR denying unemployment compensation benefits to Claimant.

## ORDER

AND NOW, this 5th day of August, 2004, the order of the Unemployment Compensation Board of Review, dated December 10, 2002, is hereby reversed.

## DISSENTING OPINION BY Judge COHN.

Respectfully, I dissent because I believe that the evidence of record, credited by the Board, supports its conclusion that Claimant had no reasonable basis for her belief that she was on Family Medical Leave (FML).

The key findings in this case are that Claimant did not formally request family medical leave (Finding of Fact (FOF) 5) and that Claimant called off on February 25, 2000, but indicated that she would be in to work the next day. (FOF 8). FOF 5 is based on the testimony of Becky Houser, the human resources coordinator and Eric Horn, her supervisor. These witnesses explained that when Claimant saw Houser "outside of the lunchroom she asked her about FML." (N.T. 19.) Claimant never even set up an appointment to discuss the matter. (N.T. 18–19.) Further, Claimant admitted that she was told she would be eligible for FML, but not that she was approved (N.T. 21.) It is also clear that she never filled out any paperwork; in fact Employer never gave her any paperwork, no doubt because Claimant never made it clear that she sought such leave. (N.T. 23.) FOF 8 is based on the testimony of Houser. This witness stated, "She [i.e., Claimant] left me a message on my machine, again, stating that she would be back to work on February 26." (N.T. 25).[1]

Employer asserted, based on this evidence, that Claimant's failure to report to work on the 26th was willful misconduct. Claimant, in order to rebut that assertion,

---

off. Houser also testified that Claimant knew she needed medical documentation because, previously, when Claimant missed a day due to her daughter's pregnancy, she provided a doctor's note. Thus, the record shows that Employer required Claimant to provide medical documentation for her prior absences related to her daughter's pregnancy.

The record also establishes that Claimant did not obtain this medical excuse until April 1, 2002. Because Claimant reasonably understood that her absence under the FMLA continued until she returned to work with the proper medical documentation, it logically follows that her absence on February 26th and the following dates was not in deliberate violation of Employer's reporting policy. Thus, Claimant's actions did not rise to the level of willful misconduct disqualifying her

from receiving unemployment compensation benefits.

1. While it is true that Claimant testified that her telephone message contained conditional language, that testimony was *not* accepted. As we have reiterated over and over again, "The Board ... is the ultimate fact-finder and arbiter of witness credibility.... As such, it [is] free to reject ... testimony as not being credible, even if it [is] uncontradicted.... This Court, on an appeal from the Board's decision, is unable to disturb the Board's credibility determination." *Teitell v. Unemployment Compensation Board of Review*, 118 Pa.Cmwlth. 406, 546 A.2d 706, 711 (1988). Here, the evidence *is contradicted*, so clearly this Court cannot disturb the Board's credibility determination.

argues that she had "good cause" for failing to report. Good cause is that which is "justifiable under the circumstances." *Herbert v. Unemployment Compensation Board of Review*, 123 Pa.Cmwlth. 546, 554 A.2d 616, 618 (1989).

Claimant's asserted good cause was her belief that she was under the FMLA. The Board, however, concluded that this belief was not reasonable. That conclusion is supported by the evidence of record, discussed above, that supports FOF 5. Thus, there is substantial evidence from which the Board could have concluded that Claimant's belief that she was on FML was not reasonable.

The majority, however, concludes that because of Employer's apparent violations of the FMLA, Claimant's belief that she was on FML was reasonable. I submit that Employer's violations of the FMLA, if in fact there were any, are irrelevant to this case. The question of whether Employer violated the FMLA does not render Claimant's belief reasonable in contradiction to the Board's credibility determination that her belief was not reasonable. The Board specifically credited the testimony of Employer's witnesses over that of Claimant. Viewing that evidence in the light most favorable to those witnesses, as already noted, the record reflects that Claimant asked about FML only in a very informal way, she never set up an appointment to discuss the matter more formally, she never completed any paperwork and that, although she was advised that she was eligible for FML, she was not told that she was approved.

The majority states that the Board's conclusion that Claimant's failure to formally request FMLA leave or to complete related forms is not supported by the "totality of the facts;" however, that is not the legal standard. The question is whether the findings and legal conclusions drawn from them are supported by substantial evidence in the record.[2] The Board had substantial evidence, based on the testimony of Houser and Horn, as recited above, from which to conclude that Claimant never really engaged the FML process and, thus, that her belief that she was on such leave was unreasonable.

It has long been the law that failure to report for work or call off, in violation of an employer's policy and without justification, constitutes willful misconduct. *See, e.g., Cassidy v. Unemployment Compensation Board of Review*, 110 Pa.Cmwlth. 367, 532 A.2d 524 (1987); *Kells v. Unemployment Compensation Board of Review*, 32 Pa.Cmwlth. 142, 378 A.2d 495 (1977). The Board here found, based upon substantial evidence of record, that Claimant did fail to report off and that she had no justification, *i.e.*, good cause, for doing so. Thus, I would affirm the Board's order.

Judge LEADBETTER joins.

---

**2.** Substantial evidence is that which a reasonable mind, without weighing the evidence or substituting its judgment for that of the factfinder, might accept as adequate to support the conclusion reached. *Centennial School District v. Department of Education*, 94 Pa. Cmwlth. 530, 503 A.2d 1090, 1093 n. 1 (1986), *affirmed*, 517 Pa. 540, 539 A.2d 785 (1988).