IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Margaret R. Smith, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 785 C.D. 2018 |
| Respondent | : | Submitted: March 12, 2019 |


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                FILED:  April 3, 2019


Margaret R. Smith (Claimant) petitions for review of the May 16, 2018 order of the Unemployment Compensation Board of Review (Board) affirming the decision of the referee to deny Claimant unemployment compensation benefits under section 402(e) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which her unemployment is due to willful misconduct connected with her work.  Upon review, we affirm.

Claimant was employed as a full-time registered nurse with Grane Hospice Care (Employer) from August 2017 until November 27, 2017.  Referee's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Findings of Fact (F.F.) 1. Employer has a policy that prohibits employees from divulging protected health information of patients. F.F. 2. Employer also has a policy that emails containing protected health information sent to external email addresses must be encrypted. F.F.3. Employer advised Claimant of these policies. F.F. 4.

Claimant's supervisor resigned at approximately the end of October 2017. F.F. 5. On November 10, 2017, Claimant sent a non-encrypted email containing protected health information of patients to her former supervisor. F.F.6. On November 13, 2017, Employer suspended Claimant pending an investigation regarding protected health information. F.F. 7. Employer sent Claimant an email requesting information about the email sent to her former supervisor. F.F. 8. That email also advised Claimant that it was necessary to encrypt email if it contains protected health information. *Id.* Claimant replied to Employer's email and stated, "thanks for your encrypt instruction." F.F. 9. Approximately 80 minutes after thanking Employer for the encrypt instruction, Claimant sent an unencrypted email containing protected health information to her own external email address. F.F. 10. On November 27, 2017, Employer terminated Claimant for violating patients' right to privacy by sending unencrypted emails containing protected health information to external email addresses. *See* F.F. 11 & Referee's Decision at 3.

Claimant subsequently applied for unemployment compensation benefits, and the Scranton unemployment compensation service center found Claimant ineligible under Section 402(e) of the Law. *See* Referee's Decision at 1. Claimant appealed to a referee, who held a hearing at which Claimant and Employer both appeared with Counsel. *See* Certified Record (C.R.) Item No. 12, 3/26/18 Transcript of Testimony (T.T.) at 1-2. Claimant testified and also presented the

2

testimony of her former supervisor. *See* T.T. at 1. Employer presented the testimony of its Director of Operations. T.T. at 2.

During the hearing, Claimant's counsel attempted to cross-examine Employer's witness about a pay dispute between Claimant and Employer and proffered, in response to Employer's counsel's objection, that the pay dispute was relevant because "the whole HIPPA thing rose out of" Claimant questioning her pay checks and was "trumped up[.]" T.T. at 13-14. The referee sustained the objection and did not allow any additional questions regarding the pay dispute. T.T. at 14 & 18.

After the hearing, the referee issued his decision in which he concluded that Employer established that Claimant violated a known policy by sending unencrypted emails containing protected health information to external email addresses and that Claimant failed to demonstrate good cause for her actions. Referee's Decision at 3. The referee concluded that Claimant was trained on Employer's policies regarding the privacy of patients and the protection of personal health information. *Id.* at 2. The referee further concluded that Claimant was aware of the requirements to encrypt emails containing personal health information when the email is being sent to an external email address. *Id.* at 2-3. The referee noted, however, that "virtually immediately after acknowledging the encryption requirement, the [C]laimant failed to follow the requirement." *Id.* at 3. The referee also noted that Claimant testified that she was informed by someone she thought was an attorney in Employer's corporate compliance department to send the protected health information to her own external email; however, the referee did not credit this testimony. *Id.* at 2. The referee found Claimant's suggestion that "a 'compliance employee', who was purportedly an attorney, advised the [C]laimant to violate

3

multiple employer policies to be implausible." *Id.* at 3. Accordingly, the Referee denied Claimant unemployment compensation benefits due to willful misconduct. *Id.*

Claimant appealed to the Board, which affirmed. Board's Decision at 2. The Board adopted the referee's findings and conclusions and further clarified the decision. *Id.* at 1. The Board explained that Claimant sent the same non-encrypted email containing protected health information on two occasions — first to her former supervisor's home email address and later to her own external email address. *Id.* The Board stated that the referee expressly rejected Claimant's explanation regarding the second incident. *Id.* Regarding the first incident, the Board rejected Claimant's explanation that she was unaware that her supervisor had left and mistakenly sent the email to the supervisor's home email address. *Id.* The Board also rejected Claimant's argument that the referee improperly excluded testimony about her complaints that she was underpaid for her work. *Id.* The Board stated that although Claimant proffered that "this whole thing was trumped up" as a result of Claimant questioning her paychecks and asserting that she was underpaid, Claimant admitted to her conduct. *Id.* The Board determined that the critical issue was whether Claimant had good cause for her actions and that any dispute regarding the amounts of Claimant's paychecks was not immediately relevant to the issue of good cause. *Id.* Consequently, the Board determined that the referee did not abuse his discretion when he did not allow testimony regarding the paycheck dispute. Claimant then petitioned this Court for review of the Board's order. [2]

---

[2] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). Further, where, as here, the petitioner does not dispute the findings

4

Before this Court, Claimant argues that the Board erred in finding that the referee properly excluded evidence regarding her ongoing pay dispute with Employer and the effect of that dispute on Claimant's actions that led to her termination. Claimant's Brief at 4 & 15. Claimant also argues that the Board erred in affirming the referee's determination that Employer established willful misconduct and that Claimant did not present good cause for her actions under the circumstances. *Id.* at 4-5 & 15. Claimant argues that the Board failed to consider the circumstances as a whole and failed to recognize the timing of events, *i.e.,* Claimant's ongoing pay dispute with Employer, followed by Employer's groundless accusations, setting a "HIPPA violation trap" for Claimant, all of which establish that Claimant did not engage in willful misconduct. *See id.* at 4 & 8-9.

The question of whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Review*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with his work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence

---

of fact, they are conclusive on appeal. *Gibson v. Unemployment Comp. Bd. of Review*, 760 A.2d 492 (Pa. Cmwlth. 2000).

showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017) (quoting *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)). Once the employer establishes a prima facie case of willful misconduct, the burden shifts to the claimant to prove good cause for his actions. *Downey v. Unemployment Comp. Bd. of Review*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"Where an employer seeks to deny UC benefits based on a work-rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule and the employee's violation of the rule." *Waverly Heights*, 173 A.3d at 1228 (internal citation omitted). An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *Chester Cmty. Charter School v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 55 (Pa. Cmwlth. 2016). "Thus, a determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach v. Unemployment Comp. Bd. of Review*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation omitted). Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *Id*. at 948. As the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Industries, Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

Here, Employer has work rules prohibiting the release of patients' protected health information and requiring the encryption of any emails containing

6

protected health information. F.F. 2-3. Claimant was aware of these policies. F.F. 4; *see* Claimant Questionnaire ¶¶ 6 & 9. Claimant sent unencrypted emails to her former supervisor and herself, thereby violating Employer's rules. *See* F.F. 6 & 10-11. Indeed, Claimant admitted that sending the email to her former supervisor was a violation of the rule. C.R. Item No. 2, Claimant Questionnaire ¶ 8.

Nonetheless, although Claimant does not dispute sending the emails, Claimant argues that not all privacy breaches are HIPPA violations. Claimant maintains that Employer's own investigation showed that the email Claimant sent to herself was deleted and not shown to anyone else and that Claimant signed a statement to that effect. Claimant's Brief at 26. Claimant also states that her former supervisor testified that she deleted the email without opening it. *Id.* Claimant argues that the fact that the supervisor would not sign a statement indicating such, thereby requiring Employer to notify affected parties of the possible breach of their privacy, was beyond Claimant's control and does not establish that she committed willful misconduct. *Id.* at 27-28.

However, Employer's policy required that emails containing protected health information be encrypted when sent to external email addresses. F.F. 3. Employer's witness explained that the sending of the unencrypted email alone was a violation, because the email could be intercepted. T.T. at 13; *see* T.T. at 17 & 19. It was the sending of unencrypted emails that was the violation. Accordingly, Employer established that Claimant violated its rule.

Nonetheless, Claimant argues that she did not commit willful misconduct because the violations were unintentional and that the Board erred in failing to consider the circumstances as a whole, which established that she had good cause. Claimant's Brief at 15, 19 & 21. In particular, Claimant maintains that the

7

Board erred in affirming the referee's decision to prohibit Claimant from presenting evidence regarding a pay dispute with Employer, which Claimant maintains was the real reason for her termination. *See id.* at 15. Claimant states that from the time she was hired in August of 2017 until she was suspended on November 10, 2017, Employer underpaid Claimant. *Id.* at 8. Claimant asserts that just as the wage payment issue "was coming to a head," Employer emailed Claimant a list of patients and accused Claimant of making medical errors on those patients' charts. *Id.* at 8. Claimant maintains that Employer's actions were an attempt to catch Claimant in a "HIPPA violation trap." *Id.* Claimant asserts that Employer sent her "a false or inapplicable list of alleged medical errors, the only purpose thereof was to seek to unsettle [Claimant] and cause her to take unwise actions." *Id.* at 10. Claimant states that she only recognized one of the 23 names on the list and contends that she attempted to investigate the list by forwarding the list to her supervisor; however, her cell phone contained both her supervisor's personal and work email addresses, and she mistakenly sent the list to the personal email address due to the stress of the situation. *Id.* at 8-9 & 17. Claimant states that Employer's "first 'HIPPA violation trap' had snagged [her]." *Id.* at 9. Claimant maintains that Employer then advised her to consult with Employer's corporate compliance department, which she did "several hours later," and claims that she was advised by an attorney to email the list to herself. *Id.* Claimant contends that this amounted to "a second 'HIPPA violation trap.'" *Id.* Claimant argues that although she had been advised of the need to encrypt the files, "the stress of being accused of a privacy violation caused [Claimant] to inadvertently violate Employer's rules." *Id.*

Initially, we note that Claimant never testified at the hearing that the "stress" of the events caused her to violate the rules. *See* T.T. at 22-25. Instead,

8

with respect to the first violation, Claimant testified that she did not know her former supervisor had left the company and that she sent the email to her former supervisor's personal email address by mistake, as her phone contained both the work email and personal email and she was in a hurry. T.T. at 22-23. With respect to the second violation, Claimant testified that an attorney in Employer's corporate compliance department instructed her to send the email to herself. T.T. at 23-25. However, the Board did not find either of these explanations to be credible. The Board is the ultimate factfinder and arbiter of credibility; its credibility determinations are not subject to re-evaluation by this Court. *Waverly Heights*, 173 A.3d at 1227. Nonetheless, while Claimant recognizes the Board discredited her testimony that corporate compliance counsel told her to email the information to herself, Claimant argues that she believed she had been instructed to do so. Claimant's Brief at 22. Consequently, Claimant maintains that she had a good faith basis to do so and, therefore, had good cause to violate Employer's rules. *Id.* The Board noted, however, that "virtually immediately after acknowledging the encryption requirement, the [C]laimant failed to follow the requirement[]" and found Claimant's suggestion that Employer's attorney advised her to do so to be "implausible." Referee's Decision at 3; *see* Board's Decision at 1. Giving Employer, the prevailing party, the benefit of all reasonable inferences drawn from the evidence as we must, *see Ductmate*, 949 A.2d at 342, it is clear that the Board rejected Claimant's assertion that she had a good faith basis for her belief. *See* Board's Decision at 1. Because Claimant's explanations for her actions were not found credible, the Board did not err in concluding that Claimant lacked good cause.

Lastly, we address Claimant's argument that the referee should have allowed Claimant to present evidence regarding her pay dispute with Employer,

9

which Claimant asserts led to Employer sending her the list of alleged patient errors and ultimately setting a "HIPPA violation trap." Claimant's Brief at 8-9 & 16-21.

In unemployment compensation proceedings, the referee has "wide latitude" regarding the admission of evidence. *Creason v. Unemployment Comp. Bd. of Review*, 554 A.2d 177, 179 (Pa. Cmwlth. 1989). "A referee is not free to disregard rules of evidence and if evidence is not relevant[,] the referee may exclude it." *Id.* Relevant evidence is evidence having any tendency to make a fact that is of consequence to the determination of the action more or less probable. Pa.R.E. 401.

Here, despite Claimant's proffer regarding the pay dispute, the referee stated it was not relevant because the issue was about Claimant's separation due to sending unencrypted emails. *See* T.T. at 14 & 18. As the Board noted, Claimant admitted to the conduct, and the critical issue was whether Claimant had good cause for her actions. Board's Decision at 1. Moreover, the referee's ruling means he determined that the existence of a pay dispute does not provide probative evidence to support good cause for violating the rule at issue. Implicit in this determination is that the referee, as affirmed by the Board, credited Employer's reason for terminating Claimant. Again, we may not overturn credibility determinations. *See Waverly Heights*, 173 A.3d at 1227. Therefore, the testimony regarding the pay dispute was not relevant to the issue before the referee. Consequently, the Board did not err in concluding that the referee did not abuse his discretion by not allowing the testimony.

Accordingly, for the foregoing reasons, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Margaret R. Smith, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 785 C.D. 2018 |
| Respondent | : | |

O R D E R

AND NOW, this 3rd day of April, 2019, the May 16, 2018 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge