IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luz M. Rivera,                          :
                    Petitioner          :
                                        :
        v.                              :
                                        :
Unemployment Compensation               :
Board of Review,                        :   No. 1005 C.D. 2024
                    Respondent          :   Submitted: October 9, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: November 19, 2025


        Luz M. Rivera (Claimant) petitions *pro se* for review of the June 24,
2024 order of the Unemployment Compensation (UC) Board of Review (Board) that
reversed the decision of a referee and denied Claimant unemployment compensation
benefits (benefits) under Section 402(e) of the Unemployment Compensation Law
(Law),[1] which provides that a claimant shall be ineligible for benefits in any week
in which her unemployment is due to willful misconduct connected with her work.
Upon review, we affirm.

        Claimant was employed by Temple University Hospital (Employer) as
a full-time Patient Care Assistant from April 8, 2008, through on or about June 10,
2022. *See* UC Board of Review Decision and Order mailed June 24, 2024 (Board
Decision) at 1, Finding of Fact (F.F.) 1, Certified Record (C.R.) at 150; *see also*

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§ 802(e).

Transcript of Testimony from Referee's Hearing, November 7, 2022 (Transcript) at 9-10, C.R. at 89-90. Employer maintained a policy, of which Claimant was aware, that employees were not permitted to look up medical records of patients whom they were not actively treating. *See* Board Decision at 1, F.F. 2, C.R. at 150; *see also* Transcript at 13 & 23, C.R. at 93 & 103. Claimant acknowledged receipt of Employer's Patient Privacy and Confidentiality and Health Information Privacy Practices (Health Information Policy) at the time she started working for Employer. *See* Board Decision at 1-2, F.F. 6, C.R. 150-51; *see also* Transcript at 6 & 13, C.R. at 86 & 93.

Notwithstanding Employer's Health Information Policy, Claimant accessed a family member's medical records without authorization during her May 13, 2022 work shift, despite the family member not then being a current patient whom Claimant was actively treating. *See* Board Decision at 1, F.F. 3-4, C.R. at 150; *see also* Transcript at 13-17, 21 & 24; C.R. at 94-97, 101 & 104. The family member's file was open for 25 minutes. *See* Board Decision at 1, F.F. 4, C.R. at 150; *see also* Transcript at 13-17, 21 & 24; C.R. at 94-97, 101 & 104. Thereafter, Employer discharged Claimant for accessing the medical records of a family member who was not her patient in violation of the Health Information Policy. *See* Board Decision at 1, F.F. 5, C.R. at 150; *see also* Transcript at 10-12; C.R. at 90-92.

On July 25, 2022, Claimant filed an application for benefits effective July 24, 2022. *See* C.R. at 5-11 & 14-18. On October 19, 2022, the UC Service Center issued a Disqualifying Separation Determination finding Claimant ineligible for benefits under Section 402(e) of the Law. *See* Disqualifying Separation Determination dated October 19, 2022 (Service Center Determination), C.R. at 42-51. Claimant appealed the Service Center Determination on October 21, 2022. *See*

2

Determination Appeal, C.R. at 53-55; *see also* Acknowledgement of UC Appeal to Referee mailed October 24, 2022, C.R. at 60-63; Notice of Hearing UC Appeal mailed October 25, 2022, C.R. at 65-78.

On November 7, 2022, a referee conducted a hearing on Claimant's appeal. *See* Transcript, C.R. at 80-106; *see also* Appeals Referee Decision dated November 10, 2022 (Referee Decision) at 1, C.R. at 127. Both Claimant and Employer participated in the hearing. *See* Transcript, C.R. at 80-106; *see also* Referee Decision at 1, C.R. at 127. On November 10, 2022, the referee issued the Referee Decision that reversed the Service Center Determination and found Claimant eligible for benefits. *See* Referee Decision at 1-5, C.R. at 127-31. Employer appealed the Referee Decision to the Board. *See* Employer Appeal, C.R. at 138-41; *see also* Acknowledgement of UC Appeal to Board of Review mailed November 14, 2022, C.R. at 143-46.

On June 24, 2024, the Board issued a decision and order that reversed the Referee Decision and found Claimant ineligible for benefits under Section 402(e) of the Law. *See* Board Decision, C.R. at 150-58. Specifically, in the Board Decision, the Board found that Employer maintained a Health Information Policy that prohibited Claimant from looking up information on patients whom she was not treating. *See* Board Decision at 2, C.R. at 151. The Board further determined that the Health Information Policy was reasonable, known to Claimant, and violated by Claimant. *See id.* The Board also found that Employer established that Claimant was terminated for willful misconduct and Claimant failed to proffer good cause for her action. *See id.* Thus, the Board ruled Claimant ineligible for benefits under the

3

provisions of Section 402(e) of the Law. *See id.* Claimant then petitioned this Court for review.[2]

Before this Court,[3] Claimant argues that the Board erred by determining that she committed willful misconduct under Section 402(e) of the Law. *See* Claimant's Amended Brief at 6.[4, 5] Employer counters that it satisfied its burden to prove that it terminated Claimant's employment based on her willful misconduct, specifically, her violation of Employer's Health Information Policy, which was known to Claimant. *See* Employer's Brief at 9-11. Further, Employer argues that Claimant waived any argument that she had good cause to violate the Health Information Policy, and that, in any event, the record is devoid of evidence of good cause for Claimant's violation. *See id.* at 12-15.

---

[2] Claimant's original communication with the Court consisted of a forwarded copy of the Board Decision received on July 16, 2024. *See* Pro Se Communication received July 16, 2024. Following receipt of this filing, the Court forwarded to Claimant instructions on how to properly appeal an agency decision and allowing Claimant 30 days to revise her filing. *See* Commonwealth Court Letter to Claimant dated July 23, 2024. Claimant then timely filed an ancillary petition for review with this Court on July 30, 2024. *See* Ancillary Petition for Review filed July 30, 2024.

[3] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *See Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). As the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

[4] The sparse argument contained in Claimant's Amended Brief also requests reconsideration of the Board Decision and includes argument against the recoupment of benefit overpayments, which is not at issue in this appeal. *See* Claimant's Amended Brief at 6-7.

[5] The Amended Brief approaches only the bare minimum of cognizable and acceptable argument before this Court, even considering Claimant's *pro se* status. However, we discern from the Amended Brief a challenge to the sufficiency of the evidence forwarded by Employer to illustrate Claimant's purported willful misconduct, and treat the brief as arguing this claim, as did Employer. *See* Employer's Brief at 6-15.

4

Initially, we note that

> the Board, not the referee, is the ultimate fact finding body and arbiter of credibility in UC cases. Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to re-evaluation on judicial review. The Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief. We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week in which "[her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work[.]" 43 P.S. § 802(e). Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *See Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with her work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or[] (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights*, 173 A.3d at 1228 (quoting *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)). Once the employer establishes a *prima facie* case of willful misconduct, the burden shifts to the claimant to prove good cause for her actions. *See Downey v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"Where an employer seeks to deny UC benefits based on a work[ ]rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule[,] and the employee's violation of the rule." *Waverly Heights*, 173 A.3d at 1228 (internal citation omitted). An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *See Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50, 55 (Pa. Cmwlth. 2016). "Thus, a determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation omitted). Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *See id.* at 948.

This Court has determined that a claimant's violation of an Employer's policy regarding the confidentiality and unauthorized access of its computerized medical records can constitute willful misconduct. *See Arbster v. Unemployment Comp. Bd. of Rev.*, 690 A.2d 805 (Pa. Cmwlth. 1997). In *Arbster*, the Court affirmed the Board's determination that a nurse claimant's conduct of accessing the medical records of a patient not in her care rose to willful misconduct in violation of an employer policy against such conduct despite 1) the patient being the claimant's mother, 2) the patient giving the claimant her personal permission to examine her

6

medical records, and 3) the patient's treating physician refusing to provide the claimant with the information she was seeking. *See Arbster*, 690 A.2d at 809-10. The Court ruled that, where alternative avenues other than violating the employer's confidentiality policy were available to the claimant to obtain the information, the circumstances did not compel the claimant to disregard the employer's policy and the claimant did not establish good cause to violate the employer's policy. *See id.*

At the hearing before the referee on this matter, Employer presented the testimony of its Associate Director of Nursing, Leslie Wood. Wood testified that she discharged Claimant for accessing a medical record of a patient without authorization in violation of Employer's Health Information Policy. *See* Transcript at 11, C.R. at 91. Wood explained that Claimant had received and acknowledged receipt of the Health Information Policy Agreement, which warned Claimant of possible termination for violating the Health Information Policy. *See* Transcript at 13, C.R. at 93. Wood further explained that Claimant conceded that she accessed the medical information of a family member who was not under Claimant's care. *See* Transcript at 14, C.R. at 94. Wood testified that Claimant explained that she – Claimant – had accessed the information briefly to check if the patient/relation was in the system. *See* Transcript at 14, C.R. at 94.

Terrianne Coe, Employer's Manager of Privacy, Audit, and Education, also testified before the referee. Coe explained that she received a report of unauthorized access of medical records of a patient by Claimant. *See* Transcript at 16, C.R. at 96. Coe further explained that the patient whose information Claimant accessed was not under Claimant's care. *See* Transcript at 17, C.R. at 97. Coe testified that Employer provides annual training on privacy policies, and that Claimant had attended such training in 2022. *See* Transcript at 18, C.R. at 98. Coe

also testified regarding a handwritten note from Claimant in which Claimant conceded the violation and promised not to do it again.[6] *See* Transcript at 21, C.R. at 101.

Claimant testified on her own behalf at the hearing. Notwithstanding her acknowledgment that she signed the Health Information Policy Agreement, Claimant conceded that she accessed the information of a patient not under her care, but explained that she had never engaged in such behavior before and maintained that she did not intentionally violate the Health Information Policy. *See* Transcript at 21-23, C.R. at 101-03. She conceded that the patient whose information she accessed was not her patient and that she accessed the information on purpose, not accidentally. *See* Transcript at 24, C.R. at 104. Claimant explained her admitted behavior by stating: "What I would like to say is that [Employer] could have been

---

[6] The handwritten note, which was signed by Claimant and admitted into evidence without objection, reads as follows:

> To whom it may concern:
>
> I Luz Rivera would like to apologize for the incident occurring on the date May 13. I would like to apologize to the entire healthcare team at Temple University Hospital. I should not of [sic] look up to verify no one not even family member to check and see if they were a patient not even if they asked me to. I promise to never ingage [sic] myself in that type of way. I will promise to never show such unprofessionalissing [sic]. I will promise to never violate the HIP[A]A Law ever again. I am very embarrassed of what I did even if I did not talk to no one about this or showed it with anyone. Please take my apology into consideration. I understand the HIP[A]A Law as it pertains at the moment. I didn't realize I was violating the HIP[A]A Law.

C.R. at 125.

a little bit more lenient towards me. It was a mistake." *See* Transcript at 21, C.R. at 101.

> Based on this evidence, the Board found as follows:
>
> Here, the [E]mployer witness credibly testified that it had a policy – of which [C]laimant was aware – that [C]laimant was not permitted to look up information of patients whom she was not actively treating due to privacy concerns. [C]laimant admitted that she looked up a patient who was not in her care or on her floor. Therefore, as [E]mployer had a reasonable policy of which [C]laimant was aware and which [C]laimant violated, [E]mployer has established that [C]laimant's behavior rose to a standard of willful misconduct.
>
> [C]laimant gave no good cause for her action[,] saying only that [E]mployer "could have been a little bit more lenient toward me." Additionally, [C]laimant is not credible in her testimony that she does not remember signing her acknowledgement of [E]mployer's [Health Information Policy].

Board Decision at 2, C.R. at 151.

We find no error in the Board's determination. Employer proffered evidence of the existence of the Health Information Policy designed to protect patients' private medical information, of which Claimant was aware. The Board determined the Health Information Policy was reasonable. The evidence further conclusively established – through Employer witnesses, various documents, and Claimant's own testimony – that Claimant violated the Health Information Policy. Additionally, we find no error in the Board's conclusion that Claimant's statement that Employer could have been more lenient toward her did not provide good cause to excuse her violation.

9

Based on the above, we conclude that substantial evidence existed to support the Board's findings of fact upon which it reversed the Referee Decision. Accordingly, we affirm the Board Decision finding Claimant ineligible for UC benefits under Section 402(e) of the Law.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luz M. Rivera,                            :
                Petitioner        :
                                  :
        v.                              :
                                  :
Unemployment Compensation       :
Board of Review,                          :       No. 1005 C.D. 2024
                Respondent        :

# **O R D E R**

AND NOW, this 19th day of November, 2025, the June 24, 2024 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge