# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy L. Crane, : 
               Petitioner : 
                       : 
             v. :   No. 1301 C.D. 2021
                       :   SUBMITTED:  February 10, 2023
Unemployment Compensation Board : 
of Review, : 
               Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## <u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED:  August 15, 2023**

      Claimant, Amy L. Crane, petitions for review of an order of the Unemployment Compensation Board of Review that affirmed the referee's decision denying her unemployment compensation benefits. The decision was based on Section 402(b) of the Unemployment Compensation Law,[1] which provides that an employee is ineligible for benefits during any week "[i]n which his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." We reverse.

      The facts as found by the Board are as follows.[2] Claimant worked as a full-time paraprofessional for Employer, Danville Area School District, from

---

[1] Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] Where the Board renders its own fact-findings, "it is the Board's findings, not the referee's, that are subject to our review." *Allen v. Unemployment Comp. Bd. of Rev*., 638 A.2d 448, 450 (Pa. Cmwlth. 1994). The facts as found by the Board are conclusive on appeal as long as the record, **(Footnote continued on next page…)**

September 12, 2018 to January 15, 2021, with a final hourly pay rate of $11.85. (Finding of Fact "F.F." No. 1.) "[C]laimant has a 16-year-old daughter with special needs and an individualized education plan [(IEP)]." (F.F. No. 2.) Due to having suicidal tendencies, the daughter cannot be left alone. (*Id.*) From September 2, 2020 to November 21, 2020, the daughter attended school in-person. (F.F. No. 3.) Following Thanksgiving break, the daughter had virtual in-home learning until January 15, 2021 due to the pandemic. (F.F. No. 4.) Beginning January 18, 2021, the daughter was required to attend school in-person every other day. (F.F. No. 5.)

Consequently, Claimant sent a January 13, 2021 email to the Superintendent stating:

> I am requesting a leave of absence without pay from January 18th through the end of March (until the end of the 3rd marking period) or until we come back to school full time in[-]person with everyone before that time. In the mean time [sic] if a program would be reinstated similar to the [Family First Corona Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020)] FFCRA,[3] I will rescind my request for leave without pay.

(Certified R. "C.R.," Item No. 8, Claimant's Hr'g Docs., Ex. C-1 at 46) (footnote added). The Superintendent responded:

> The District plan is to have students return to the buildings on January 18th in a hybrid model. We have required all employees to work from the building unless there were

in its entirety, contains substantial evidence to support those findings. *Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 608 (Pa. Cmwlth. 2011). "Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Popoleo v. Unemployment Comp. Bd. of Rev.*, 777 A.2d 1252, 1255 (Pa. Cmwlth. 2001).

[3] Claimant testified that she had participated in FFCRA the prior year but that it was no longer available. (May 18, 2021 Hr'g, Notes of Test. "N.T." at 7 and 15; Certified R. "C.R." at 69 and 77.)

> special circumstances that had to be approved by the [S]uperintendent. Once any students are in the building[,] the expectation is for you to return to work full-time. Leave of absence without pay will not be approved.

(*Id.*)

In response, Claimant submitted a January 14, 2021 letter of resignation stating:

> Please accept this letter as my intent to resign at the close of business on Friday, January 15, 2021.
>
> Thank you for the opportunity to work with the employees and children at the . . . District. I have enjoyed my time for the past 16 years as a substitute aide and as a full[-]time aide. I have found working with the children with special needs very rewarding.
>
> Unfortunately, COVID has affected my family situation big time this year. I have a special needs child in school, she attends every other day and really needs my guidance. I also have other children that go to school daily and every other day. My main goal has always been to be a mother first. In these times many of us have had to choose between family and career. I am choosing my family.
>
> In the future I look forward to working at the District by being put on the sub list again and per our conversation on the phone I would like to receive my sick pay January 4 through January 15.

(*Id.* at 47.)

Subsequently, Claimant made a claim for unemployment compensation benefits. The Department of Labor and Industry found her to be ineligible for benefits under Section 402(b) of the Law. On appeal, the referee held a telephonic hearing at which Claimant acted *pro se* and Employer was represented by counsel. Employer had two witnesses available to testify, the Superintendent and the District

Accountant/Human Relations Coordinator, but presented only the Superintendent's testimony. The referee affirmed the denial of benefits. Before the Board, North Penn Legal Services submitted a letter brief on Claimant's behalf. The Board issued its own findings of fact, affirming the referee's denial of benefits. Claimant's petition for review to this Court followed.

A claimant who voluntarily quits bears the burden of proving necessitous and compelling cause for leaving her job. *Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657 (Pa. Cmwlth. 2006). Specifically, a claimant must establish that "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment." *Id*. at 660. A determination as to whether necessitous and compelling cause for leaving employment exists is a question of law, subject to our plenary review. *Johnson v. Unemployment Comp. Bd. of Rev.*, 869 A.2d 1095 (Pa. Cmwlth. 2005).

Claimant challenges Finding of Fact Number 9, that before quitting Claimant neither informed the Superintendent of the daughter's suicidal tendencies and inability to stay home alone nor requested leave under the Family and Medical Leave Act (FMLA),[4] and Finding of Fact Number 10, that Claimant never advised the Superintendent that she was willing to work every other day in accordance with the daughter's in-person school schedule. Even examining the testimony in the light most favorable to Employer as the prevailing party and giving it the benefit of any

---

[4] 29 U.S.C. §§ 2601, 2611-2620, 2631-2636, 2651-2654.

4

inferences that can logically and reasonably be drawn from the evidence,[5] we conclude that the record, in its entirety, does not contain substantial evidence to support these findings.

As the Board found, Claimant has a teenage daughter who has special needs and an IEP and who cannot be left alone due to suicidal tendencies.[6] Claimant's testimony is undisputed that she advised the Superintendent of the daughter's issues and that she needed to stay home with her. That testimony provides:

> When I talked to [the Superintendent] on the phone, I know we talked about a death that happened because of COVID and the family and how my child needed me at home and we were [sic] suicidal, but she was getting help and still needs that one-on-one, like she needs someone around. And I just wish now that she would have referred to me or talked to me about an FMLA that I could have taken. I asked but no one ever even – well I didn't ask about that. I only said about if there's any other programs or if I could do anything.

(C.R., Item No. 11, May 18, 2021 Hr'g, Notes of Test. "N.T." at 17; C.R. at 79.)

Moreover, it is undisputed that the Superintendent was aware of the IEP and that she actually reviewed it. The Superintendent testified:

> [T]here's a section in an [IEP] for students who are 14 and older regarding what we call transition and that is skills to help them move from school-age to adulthood, and in those there are three areas. There's post-secondary

---

[5] *Rodriguez v. Unemployment Comp. Bd. of Rev.*, 174 A.3d 1158, 1163 (Pa. Cmwlth. 2017).

[6] It is within the Board's province to determine credibility and evidentiary weight. *Oliver v. Unemployment Comp. Bd. of Rev.*, 5 A.3d 438 (Pa. Cmwlth. 2010). This Court may not re-evaluate the Board's factual determinations. *Bell v. Unemployment Comp. Bd. of Rev.*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007).

education, employment, and independent living. I found that under independent living . . . the team determined that the daughter demonstrated age-appropriate living skills and no independent living outcome would be addressed as part of the transition plan at that time. So that was repeated a few times within the IEP. But it was saying that she had independent living skills.

(N.T. at 16; C.R. at 78.) However, despite the fact that the IEP indicated that the daughter had independent living skills, the Superintendent did not testify as to the date of the IEP or when the team last updated it. Given the fact that the daughter attended school in-person from only September to November 2020, the team may or may not have had an opportunity to update the IEP to incorporate the challenges of the pandemic and their effect on the daughter. Consequently, it is not clear that the team's conclusions were accurate as of the date that the Superintendent accessed the IEP. In addition, the fact that the Superintendent took it upon herself to review the IEP indicates at least some uncertainty as to whether the daughter was capable of staying home without adult supervision. Importantly, having independent living skills is not inconsistent with, and does not in any way negate, the danger posed by the daughter's suicidal tendencies. While one may not need help with life skills, such as making a sandwich, dressing oneself, etc., a suicidal person may still need supervision to prevent self-harm.

In addition, Claimant had no reason to believe that the Superintendent would not approve her request for unpaid leave given the fact that her prior request for unpaid leave was approved. The December 2020 email exchange provides:

[Claimant:] Since we are going to remote learning til January 15 and the FFCRA program will be expiring at the end of December, I am requesting a leave without pay from January 4 to the 15 [2021]. If the FFCRA program

6

would be reinstated or if a similar program is created, I will rescind my request for leave without pay.

[Superintendent:] Amy, at this time there has not been any plan to extend FFCRA which ends on Dec. 31, 2020. *You may take days without pay.* Hopefully things can go back to normal soon.

(C.R., Item No. 8, Claimant's Hr'g Docs., Ex. C-1 at 35) (emphasis added). This email exchange also indicates that the Superintendent was aware that when the District implemented remote learning, Claimant needed leave time. Thereafter, when a hybrid schedule was announced, Claimant was compelled to request a longer unpaid leave of absence as described in the aforementioned January 2021 email exchange at issue. As noted, Claimant requested unpaid leave from January 18, 2021 through the end of March 2021 "or until we come back to school full time in[-]person with everyone before that time." (*Id*. at 46.)

As for Finding of Fact Number 10, that Claimant never advised the Superintendent that she was willing to work every other day in accordance with the daughter's in-person school schedule, we note Claimant's testimony that she asked the Superintendent whether "there's any other programs or if I could do anything." (N.T. at 17; C.R. at 79.) Claimant's query as to whether there was anything she could do arguably included working out a solution in accordance with her daughter's schedule. In addition, notwithstanding Claimant's acknowledgement that she did not specifically ask the Superintendent about the FMLA, Claimant definitely asked about programs and whether there was anything she could do in order to remain employed. (*Id*.)

Finally, Claimant argues that her leave request was tantamount to an application under the FMLA, thereby triggering Employer's obligation to issue her a mandatory notice of rights and obligations under the FMLA. In support, she cites

7

*Eshbach v. Unemployment Compensation Board of Review*, 855 A.2d 943, 949 (Pa. Cmwlth. 2004),[7] a willful misconduct case. Pertinent here, we observed that a claimant must notify the employer that leave is necessary to care for a serious medical condition but he or she need not expressly request FMLA leave in order to trigger an employer's obligation. *Id*. at 948. In other words, an employer's obligation is triggered when it acquires knowledge that an employee's leave may be for an FMLA-qualifying reason.

Here, Employer did not contradict Claimant's testimony that she informed the Superintendent of the daughter's needs thereby providing Employer with sufficient information to trigger its obligation, at a minimum, to make further inquiries of her regarding purported grounds for eligibility under the FMLA. Consequently, Claimant made reasonable efforts to preserve her employment by way of a request for unpaid leave and/or via her query as to whether there was anything she could do in order to remain employed. Employer is not an unsophisticated employer, it had unfettered access to the daughter's confidential records, and Claimant had worked there for sixteen years.

Accordingly, we conclude that Claimant met her burden of proving that she had necessitous and compelling cause for her voluntary quit and, therefore, reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[7] In *Eshbach*, this Court held that the claimant's failure to report her absence did not constitute willful misconduct where she had a reasonable belief that she was on FMLA leave on the date in question because she had provided the employer with sufficient information to make it aware that she needed FMLA-qualifying leave and the employer merely told her to report to it once her daughter gave birth and to provide a doctor's excuse before returning to her employment.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy L. Crane,                                :
        Petitioner            :
                                  :
        v.                        :   No. 1301 C.D. 2021
                                  :
Unemployment Compensation Board              :
of Review,                                   :
        Respondent           :

# **O R D E R**

AND NOW, this 15th day of August, 2023, the order of the Unemployment Compensation Board of Review is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita