IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Virgil Carter,                          :
                    Petitioner          :
                                        :
        v.                              :  No. 1022 C.D. 2019
                                        :  SUBMITTED:  June 9, 2020
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ELLEN CEISLER, Judge (P)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  July 7, 2020

       Virgil Carter (Claimant) petitions for review of the June 4, 2019 Order of the

Unemployment Compensation Board of Review (Board) affirming the decision of a

Referee to deny Claimant unemployment compensation (UC) benefits.  The Board

concluded that Claimant was ineligible for UC benefits because he was discharged

for willful misconduct under Section 402(e) of the Unemployment Compensation

Law (Law).[1]  We affirm the Board's Order.

## **Background**

       Claimant worked as a full-time Food Service Officer with the Bucks County

Department of Corrections (Employer) from May 19, 2003 through February 7,

2019.  Bd.'s Finding of Fact (F.F.) No. 1; Notes of Testimony (N.T.), 4/17/19, Ex.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e).  Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for
any week "[i]n which his unemployment is due to his discharge or temporary suspension from
work for willful misconduct connected with his work."  43 P.S. § 802(e).

E-3.  Employer has several policies prohibiting the following conduct by its officers: any act that might endanger the safety or lives of others; unsatisfactory work performance; neglect of duty; serious mistakes due to carelessness, incompetence, or inefficiency; negligence, loss, or careless control of radios, handcuffs, or weapons; violation of administrative procedures; and violation of a rule, regulation, or policy.  Bd.'s F.F. No. 2.  Pursuant to Employer's policies, Claimant was required to keep his radio with him at all times.  *Id.* No. 3.  Claimant was also required to keep the door to the kitchen office locked at all times.  *Id.* No. 4.  Claimant was or should have been aware of Employer's policies.  *Id.* No. 5.

On January 3, 2019, Claimant left his radio unattended in the kitchen office and left the door to the kitchen office open.  *Id.* No. 6.  An inmate went into the kitchen office and made several attempts to use the radio to contact Employer's control center to unlock the institution's doors.  *Id.* No. 7.  After this incident, Employer's Deputy Superintendent reviewed video surveillance and observed Claimant's location outside the kitchen office and observed the inmate walk into the kitchen office and put the radio to his mouth.  *Id.* No. 8.

On January 18, 2019, Employer scheduled a *Loudermill* hearing[2] for January 24, 2019.  *Id.* No. 9.  On February 7, 2019, Employer discharged Claimant for leaving his radio unattended in the unlocked kitchen office.  *Id.* No. 10.

Claimant filed a claim for UC benefits, which the local UC Service Center denied.  The Service Center found that Employer discharged Claimant for violating a work rule, Claimant was aware or should have been aware of the rule, and Claimant violated the rule.  Record (R.) Item No. 5.  The Service Center found that Claimant

---

[2] "A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532[] . . . (1985)."  *Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 31 n.2 (Pa. Cmwlth. 2011).

2

was discharged for violating the rule "because[] he was the only officer on post and left a county radio unattended in the unlocked kitchen office." *Id.* The Service Center also found that Claimant did not establish good cause for violating the rule. *Id.* Therefore, the Service Center determined that Claimant committed willful misconduct under Section 402(e) of the Law. *Id.*

Claimant appealed to the Referee, who held a hearing on April 17, 2019. Claimant appeared *pro se* and testified on his own behalf. Employer presented the testimony of its Human Resources Manager, Maryellen Lott, and its Deputy Superintendent, David Galione.

Following the hearing, the Referee concluded that Claimant committed willful misconduct under Section 402(e) of the Law. Based on the evidence presented at the hearing, the Referee determined:

> [E]mployer maintains multiple policies regarding work performance[] [and] neglect of duty and [prohibiting] any act which might endanger the safety or lives of others. [E]mployer's policies require[d] that [C]laimant keep [his] radio with him at all times and [that] the door to the kitchen office . . . remain locked. [C]laimant was or should[] [have] been aware of all of [E]mployer's policies. An incident occurred on January 3, 2019[] [when C]laimant left his radio unattended in the kitchen office and the office was open.
>
> [C]laimant argued that he took the radio to the office to change the battery but he was not able to change the battery because he never had training. [C]laimant further argued the radio was dead, so when he heard noise in the kitchen, he left the [radio] and went to check the noise in the kitchen. [C]laimant further argued that the lock to the office was broken and there was a work order in to repair it.
>
> The Referee does not credit this testimony. The Referee credits [E]mployer's testimony that a work order for the lock to the office was completed after the January 3, 2019 incident. The Referee credits [Mr. Galione's] testimony that he observed [C]laimant's location in the

3

kitchen and observed an inmate go into the kitchen office and put the radio to his mouth. [C]laimant clearly violated [E]mployer's polic[ies] and presented no testimony or evidence to establish good cause for his actions.

Ref.'s Order, 4/23/19, at 2-3. Therefore, the Referee affirmed the Service Center's denial of UC benefits.

Claimant appealed to the Board, which affirmed the Referee's decision. The Board adopted and incorporated the Referee's findings of fact and conclusions of law and made the following additional findings:

The Board finds credible [E]mployer's testimony[,] including its testimony that [C]laimant received prior discipline for safety violations; that during the January 3, 2019 incident he was not distracted by any alleged incident between inmates; that he simply left the door to the kitchen office wide open; that the door could have easily been locked and secured if [C]laimant just pulled it closed more forcefully; and that he left an operational radio on the office desk instead of keeping it on his person, which [an] inmate used to call the control center in an attempt to trick the officer at the control center into unlocking doors. The Board does not find credible any of [C]laimant's testimony to the contrary. [C]laimant's actions were deliberate.

Bd.'s Order, 6/4/19, at 1. Claimant now petitions this Court for review.[3]

## Analysis

On appeal, Claimant asserts that the Board erred in concluding that his actions rose to the level of willful misconduct. Specifically, Claimant contends that his conduct was merely negligent and Employer failed to prove that he intentionally violated Employer's policies. We disagree.

---

[3] Our scope of review is limited to determining whether the necessary factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). An employer seeking to prove that a claimant committed willful misconduct by violating a work policy "must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495, 500 (Pa. Cmwlth. 2018). The employer must also show that the employee deliberately violated the employer's policy. *Tongel v. Unemployment Compensation Board of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985). If the employer satisfies its burden of proof, then "the burden shifts to the claimant to demonstrate good cause for violating the [policy]." *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

Here, Employer's policies required that Claimant keep his radio on his person at all times and keep the door to the kitchen office locked at all times, and Claimant was aware of these policies. Bd.'s F.F. Nos. 3-5; *see* R. Item No. 3. At the hearing, Employer's Deputy Superintendent, Mr. Galione, testified regarding the January 3, 2019 incident as follows:

> The final termination event was due to an incident that happened in the kitchen when [Claimant] was working. . . . [Claimant] was supposed to be supervising inmate workers, maintaining security equipment, maintaining all the security policies. . . . [An] . . . emergency radio, which was supposed to be kept on [Claimant's] person, was . . . sitting on the desk in the office. The office was supposed to be secured. The office is supposed to be secured at all times. The [kitchen] door was wide open, the radio was on the desk, and an inmate gained access to

5

the radio, called the control center, trying to access secured doors, which ultimately [led] to the outside of the institution.

N.T., 4/17/19, at 7. Mr. Galione further testified that after Claimant viewed the video surveillance of the incident, he did not deny that he left his radio in the kitchen office unsecured. *Id.* at 8. Based on Mr. Galione's credible testimony, the Board found that Employer met its burden of proving that Claimant violated its policies. Bd.'s F.F. Nos. 6-7; Bd.'s Order, 6/4/19, at 1.

In his appellate brief, Claimant does not dispute that he left his radio unattended in Employer's kitchen office and failed to secure the office door. Instead, he claims that his conduct was inadvertent and did not evidence an intentional disregard of Employer's policies.

It is true that "[a]n inadvertent or negligent violation of an employer's rule may not constitute willful misconduct." *Chester Cmty.*, 138 A.3d at 54. "[A] determination of what amounts to willful misconduct requires a consideration of 'all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives.'" *Eshbach v. Unemployment Comp. Bd. of Review*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (citation omitted). If the employee's action "is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct." *Id.* at 948.

At the hearing, Claimant testified that he left his radio unattended because he heard an altercation between two inmates and ran out of the kitchen office quickly to investigate the situation. N.T., 4/17/19, at 18-19. He testified that when he heard the altercation, he was in the midst of trying to change the battery in his radio and that is why he left the radio on the desk. *Id.* at 20-21. He further testified that he had difficulty changing the battery because he was never trained on how to change

6

the battery because his radio was new.  *Id.* at 21.  The Board, however, expressly discredited Claimant's testimony.  Bd.'s Order, 6/4/19, at 1.

In contrast, Mr. Galione testified that, in the written report Claimant prepared on the day of the incident, Claimant stated that "he heard yelling by the serving line and the dumper area [of the kitchen], so he went to see what was going on and . . . didn't have his radio on him."  N.T., 4/17/19, at 9; *see id.*, Ex. E-1.[4]  However, when Mr. Galione reviewed the surveillance footage, "[t]he video did not support [Claimant's] statement."  N.T., 4/17/19, at 9.  Mr. Galione further testified that if there had been an altercation between inmates, Claimant "should've called for assistance" and "should've retrieved his radio a[nd] secured the office door and went about doing his business."  *Id.* at 10.  Finally, Mr. Galione testified that if the battery in Claimant's radio needed to be changed, it should have taken Claimant "three to five seconds" to change the battery.  *Id.*  Mr. Galione explained:

> It's a police radio, where the battery is attached to the back.  At the bottom of the battery there[ are] two buttons on the side which you squeeze.  The battery slides down.  You grab the spare battery, you slide it up and it clicks in. . . . That's it.

*Id.*  The Board credited Mr. Galione's testimony and resolved the conflicts in the evidence in Employer's favor, which the Board was entitled to do.  Bd.'s Order,

---

[4] In the incident report, Claimant wrote:

> On the date of 1/3/19 [at] ap[p]rox[imately] 1710 to 1735 [hours] I . . . notice[d] the battery on my radio . . . was beeping low battery from all day use.  I went to change the battery when I secured the two knives that [were] on the prep table.[] [A]t this time [I] heard yelling by the serving line and dumper area, so I went out to see what was going on and didn't have time at the moment to change the battery that I was in the process of doing.  [T]he radio was still in the bolster on the kitchen office desk.

N.T., 4/17/19, Ex. E-1.

6/4/19, at 1; *see Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999) (stating that the Board is the ultimate factfinder in UC cases and is empowered to resolve conflicts in evidence, determine the weight to be accorded the evidence, and determine the credibility of witnesses).

Claimant also asserts that he did not intentionally leave the kitchen office door open. He claims that he pulled the office door shut and it was slightly closed but did not lock because the lock was malfunctioning. At the hearing, Mr. Galione acknowledged that a work order was issued for the office door lock two weeks after Claimant's incident; however, Mr. Galione credibly testified that, at the time of the incident, "every one on shift, every other officer" was able to secure the office door simply by "pull[ing] it a little tighter." N.T., 4/17/19, at 15. Furthermore, the Board found that when Claimant exited the kitchen office, the door was not slightly closed, as he had claimed, but "wide open." Bd.'s Order, 6/4/19, at 1.

The Board determined, based on the credible evidence of record, that "[Claimant] was not distracted by any alleged incident between inmates; that he simply left the door to the kitchen office wide open; that the door could have easily been locked and secured if [C]laimant just pulled it closed more forcefully; and that [Claimant] left an operational radio on the office desk instead of keeping it on his person." *Id.* Moreover, Claimant knew that he was required to keep his radio with him at all times and to keep the kitchen office door locked at all times, Bd.'s F.F. No. 5, but he still purposefully exited the office without his radio and left the office door unsecured. The Board rejected each of Claimant's proffered reasons for doing so.

We agree with the Board that Claimant's conduct was not inadvertent, but an intentional violation of known work policies. *Cf. Oliver v. Unemployment Comp.*

8

*Bd. of Review*, 5 A.3d 432, 442 (Pa. Cmwlth. 2010) (*en banc*) (where the claimant admitted to not counting the number of children under her supervision in violation of the employer's rule, we held that "[e]ven if [the claimant's] actions constituted an honest mistake, it would not justify the violation of [the e]mployer's [100% supervision] rule"); *Heitczman v. Unemployment Comp. Bd. of Review*, 638 A.2d 461, 463 (Pa. Cmwlth. 1994) (*en banc*) (concluding that because the claimant violated a known work policy regarding how to safely reverse his truck, he committed willful misconduct, despite his claim that "he did not make a deliberate decision to back up the truck improperly"). The Board also properly concluded that Claimant did not establish good cause for violating Employer's policies. Bd.'s Order, 6/4/19, at 1.

Finally, Claimant contends that "Employer presented no evidence that [he] ever received discipline for conduct related to his radio or for leaving doors open." Claimant's Br. at 12. However, while there was no evidence regarding prior discipline specifically relating to Claimant's radio or unsecured doors, Employer did present evidence that on May 29, 2018, less than eight months before the incident at issue, Claimant received a final warning for violating Employer's policies relating to safety and security. N.T., 4/17/19, at 13 & Ex. E-5.[5] In any event, the employer need not show that the employee received a prior warning for the same conduct that led to his termination to support a willful misconduct determination. *See Braxton v. Unemployment Comp. Bd. of Review*, 400 A.2d 694, 696 (Pa. Cmwlth. 1979) ("We

---

[5] This disciplinary action resulted from an April 2018 incident wherein an inmate "was able to take . . . items [from the kitchen] as a result of a failure of [Claimant] to perform a pat search on all [inmates] every time they leave the kitchen." N.T., 4/17/19, Ex. E-5. Claimant objected to the admission of this document at the hearing, but the Referee overruled the objection and admitted the document. Claimant does not challenge that ruling on appeal.

do not believe a specific warning is a prerequisite to a finding of willful misconduct where company rules have not been followed.").[6]

## Conclusion

In sum, we conclude that Claimant violated Employer's policies by failing to keep his radio on his person and failing to secure the door to the kitchen office, which resulted in an inmate using Claimant's radio to try to unlock the correctional facility's doors. We agree with the Board that Claimant's actions were deliberate and not merely negligent. Finally, Claimant did not establish that he had good cause for violating Employer's policies. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

[6] Claimant also argues that "Employer seems to suggest that due to the importance of [Claimant's] job in maintaining safety and security in the detention facility, he should be held to a higher standard of professional conduct with respect to determinations of willful misconduct," an argument that "[the Pennsylvania] Supreme Court has explicitly rejected." Claimant's Br. at 12-13 (citing *Navickas v. Unemployment Comp. Bd. of Review*, 787 A.2d 284 (Pa. 2001)). However, there is no indication in the record that the Board applied any standard of conduct to Claimant other than that outlined in Employer's written policies. Therefore, we reject this claim.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Virgil Carter,                                          :
                          Petitioner                    :
                                                        :
          v.                                            :   No. 1022 C.D. 2019
                                                        :
Unemployment Compensation                               :
Board of Review,                                        :
                          Respondent                    :

# **O R D E R**

AND NOW, this 7th day of July, 2020, the Order of the Unemployment Compensation Board of Review, dated June 4, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge