IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of    :
Agriculture,    :
            Petitioner    :
    :
    v.    :
    :
Unemployment Compensation    :
Board of Review,    :   No. 1511 C.D. 2023
            Respondent    :   Submitted: September 9, 2024

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: October 4, 2024

The Pennsylvania Department of Agriculture (Employer) petitions for review of the December 6, 2023 order of the Unemployment Compensation Board of Review (Board). The Board reversed a referee's decision that had found Claimant ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which his unemployment is due to willful misconduct connected with his work. Upon review, we affirm.

## I. Background

Phillip Stober (Claimant) worked for Employer as a full-time Administrative Officer 3, Division Chief, beginning on February 2, 2020. *See* Board Decision and Order dated December 6, 2023 (Board Opinion) at 1, Findings of Fact

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

(F.F.) No. 1, Reproduced Record (R.R.) at 291a. As an employee of Employer, Claimant was subject to the Governor's Code of Conduct (Code of Conduct), which restricts government employees from engaging in political activity during work hours without prior permission and requires employees to seek and obtain approval to engage in political activity and prior to accepting supplementary employment. *See* Board Opinion at 1-2, R.R. at 291a-92a; *see also* Code of Conduct, R.R. at 209a-18a. When he began his employment with Employer in early 2020, Claimant received, reviewed, and acknowledged the Code of Conduct's contents. *See* Board Opinion at 1-2, F.F. Nos. 2-6, R.R. at 291a-92a; *see also* Policy Acknowledgement Summary signed January 27, 2020 (Policy Acknowledgment Summary), R.R. at 236a-38a.

In April of 2021, as a joke and not intending to win, Claimant and his sister wrote in his name for Minority Inspector of Elections in Manor Township (Minority Inspector) on their mail-in ballots, as no one was running for the position. *See* Board Opinion at 2, F.F. Nos. 7-8, R.R. at 292a. Claimant did not campaign or accept financial contributions in relation to the Minority Inspector election. *See* Board Opinion at 2, F.F. No. 10, R.R. at 292a.

In November of 2021, Claimant received a letter from the Lancaster County Board of Elections (Board of Elections) notifying him that he had won the election for Minority Inspector. *See* Board Opinion at 2, R.R. at 292a. Claimant did not fill out paperwork or otherwise inform Employer about the position because he did not think the position required him to do so. *See* Board Opinion at 2, F.F. No. 12, R.R. at 292a. Claimant thought the position of Minority Inspector was effectively a glorified poll worker for which he would not be paid. *See* Board Opinion at 2, F.F. Nos. 10-11, R.R. at 292a.

2

Months later, in April of 2022, Claimant received an email from the Board of Elections directing him to report for duty as the Minority Inspector for an upcoming primary election in May of 2022. *See* Board Opinion at 2, F.F. No. 13, R.R. at 292a. By that time, Claimant had forgotten he had won the election for Minority Inspector. *See* Board Opinion at 2, F.F. No. 14, R.R. at 292a. Claimant reached out to his superiors at Employer to determine whether he could act in the position. *See* Board Opinion at 2, F.F. No. 15, R.R. at 292a. In consultation with its Human Resources (HR) department and legal counsel, Employer ultimately determined that Claimant could not act as Minority Inspector and that to do so would violate the Code of Conduct. *See* Board Opinion at 2, F.F. No. 16, R.R. at 292a. Employer's chief legal counsel (Chief Counsel) informed Claimant that he could not act as Minority Inspector; Claimant emailed the Board of Elections and resigned from the position of Minority Inspector that same day. *See* Board Opinion at 2, F.F. No. 17, R.R. at 292a; *see also* Claimant's Resignation Email dated May 12, 2022 (Resignation Email), R.R. at 192a-93a.

Employer conducted an investigation of the matter and held a Pre-Disciplinary Conference (PDC) on June 10, 2022. *See* Board Opinion at 2, F.F. No. 18, R.R. at 292a; *see also* Investigation and PDC Notice Letter dated June 9, 2022 (PDC Notice), R.R. at 243a. Following the PDC, on June 27, 2022, Employer terminated Claimant for failing to follow Employer's instruction, policies, or procedures concerning supplemental employment and for violation of Employer's policies concerning prohibited political activity. *See* Board Opinion at 2, F.F. No. 19, R.R. at 292a; *see also* Termination Letter dated June 27, 2022 (Removal Letter), R.R. at 244a-45a.

3

Claimant thereafter applied for unemployment compensation (UC) benefits, which a UC Service Center denied under Section 402(e) of the Law. *See* Appeals Referee Decision dated February 21, 2023 (Referee Decision) at 1, R.R. at 253a. Claimant appealed, and a hearing was held before a referee on February 2, 2023. *See* Referee Decision at 1, R.R. at 253a; *see also* Transcript of Testimony, February 2, 2023 (N.T.), R.R. at 125a-209a. Following the hearing, the referee affirmed the Service Center's determination denying Claimant's UC appeal under Section 402(e) of the Law. *See* Referee Decision, R.R. at 253a-62a; Board Opinion at 1, R.R. at 291a. Claimant thereafter appealed to the Board, which reversed the Referee Decision without taking further evidence. *See* Board Opinion, R.R. at 291a-300a. Employer then petitioned this Court for review.

## II. Issues

On appeal,[2] Employer contends that the Board erred in reversing the referee's determination that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *See* Department's Br. at 7, 18-41. Specifically, Employer argues that Claimant's writing his name in as a candidate for election to the post of Minority Inspector, asking his sister to do the same, and ultimately holding the position of Minority Inspector for six months prior to his resignation represented deliberate, volitional acts on Claimant's part that illustrated a willful violation of workplace rules and policies pertaining to political activities, of which Claimant had actual knowledge. *See* Employer's Br. at 18-37. Employer also argues that the record

---

[2] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *See Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). As the prevailing party below, Claimant is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

4

lacks substantial evidence to support the Board's findings of fact that Claimant did not intend to win the position of Minority Inspector and that he forgot he won the position after being informed of his victory. *See* Employer's Br. at 38-41.

### III. Discussion

Initially, we observe that

> the Board, not the referee, is the ultimate fact finding body and arbiter of credibility in UC cases. Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to re-evaluation on judicial review. The Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief. We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]" 43 P.S. § 802(e). The question of whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *See Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016).

For purposes of determining a discharged employee's eligibility for UC benefits, the employer bears the burden of proving that the employee engaged in willful misconduct connected with his work. *See* Section 402(e) of the Law, 43 P.S.

5

§ 802(e); *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012).  This Court has defined willful misconduct as

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of [an employer's] rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights*, 173 A.3d at 1228 (quoting *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)).  Once the employer establishes a *prima facie* case of willful misconduct, the burden shifts to the employee to prove good cause for his actions.  *See Downey v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"Where an employer seeks to deny UC benefits based on a work[] rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule and the employee's violation of the rule."  *Waverly Heights*, 173 A.3d at 1228 (internal citation omitted).  An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct.  *See Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50, 55 (Pa. Cmwlth. 2016).  "Thus, a determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives."  *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation omitted).  Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct.  *See id.* at 948.

Employer presented three witnesses and supporting documentation at the hearing before the referee in this matter. First, Employer presented the testimony of Talene Shaffer, a HR Analyst IV for Employer with 22 years of HR experience. *See* N.T. at 22-37, R.R. at 147a-62a. Ms. Shaffer testified that she is familiar with Claimant and his situation. *See* N.T. at 22-23, R.R. at 147a-48a. In May of 2022, Ms. Shaffer learned from Ashley Fehr, Employer's Director of Agricultural Marketing and Business Development (Director Fehr), that Claimant was potentially engaging in political activity, and she participated in the investigation into the matter. *See* N.T. at 23, R.R. at 148a. Ms. Shaffer testified that she is familiar with the Code of Conduct, which outlines acceptable and prohibited political activity and applies to all Commonwealth employees. *See* N.T. at 23-24, R.R. at 148a-49a; *see also* Code of Conduct, R.R. at 209a-18a.

In addition to the Code of Conduct, Ms. Shaffer explained that the Commonwealth also has a management directive, Management Directive 515.18 (Management Directive), applicable to all Commonwealth employees. *See* N.T. at 25, R.R. at 150a; *see also* Management Directive, R.R. at 228a-32a. The Management Directive discusses supplementary employment, which Ms. Shaffer explained generally includes political activity positions. *See* N.T. at 25, R.R. at 150a; *see also* Management Directive, R.R. at 228a-32a. Ms. Shaffer noted that, per the Management Directive, before engaging in supplementary employment, employees must first apply to participate in the employment and receive an official response from Employer indicating whether the request is approved or denied. *See* N.T. at 25, R.R. at 150a; *see also* Management Directive, R.R. at 228a-32a.

Ms. Shaffer further explained that the Department of Agriculture's Work Rules (Work Rules) are also applicable to Employer's employees. *See* N.T.

7

at 26, R.R. at 151a; *see also* Work Rules, R.R. at 233a-35a. Ms. Shaffer testified that Work Rule II covers employees' need to follow instructions, procedures, and policies. *See* N.T. at 26, R.R. at 151a. Ms. Shaffer also noted that the Code of Conduct and Management Directive are considered policies under the Department's Work Rules. *See* N.T. at 26, R.R. at 151a.

Ms. Shaffer testified as to specific guidelines called the Guidelines for Political Activities for Commonwealth Employees (Political Activities Guidelines) that relate to political activity and are applicable to all Commonwealth employees, including those with Claimant's job classification. *See* N.T. at 27-28, R.R. at 152a-53a; *see also* Political Activities Guidelines, R.R. at 202a-05a. The Political Activities Guidelines outline specific parameters and protocols for, and prohibitions on, political activities. *See* N.T. at 28, R.R. at 153a; *see also* Political Activities Guidelines, R.R. at 202a-05a. Ms. Shaffer explained that the Political Activities Guidelines prohibit all Commonwealth employees from participating in any political activity, such as campaigning, fundraising, canvassing, or poll watching during work hours. *See* N.T. at 28, R.R. at 153a; *see also* Political Activities Guidelines, R.R. at 202a-05a. She further explained that, like the Management Directive, the Political Activities Guidelines further require prior approval for employees seeking to engage in political activity. *See* N.T. at 28-29, R.R. at 153a-54a.

Ms. Shaffer explained that Claimant read and acknowledged the receipt of written copies of the above policies during his employment, as evidenced by the Policy Acknowledgement Summary (Policy Acknowledgement) contained in his personnel file. *See* N.T. at 29, R.R. at 154a; *see also* Policy Acknowledgement, R.R. at 236a-28a. The Policy Acknowledgement identifies the policies concerning supplementary employment, conduct expectation, and political activity as having

8

been received and reviewed by Claimant. *See* N.T. at 29, R.R. at 154a; *see also* Policy Acknowledgement, R.R. at 236a. Claimant electronically acknowledged receipt of these policies on January 27, 2020. *See* N.T. at 29-30, R.R. at 154a-55a; *see also* Policy Acknowledgement, R.R. at 236a.

Ms. Shaffer further testified that Claimant also underwent a training session titled Ethics in the Workplace (Ethics Training) that covers the Code of Conduct, supplementary employment, and engaging in political activity. *See* N.T. at 30-31, R.R. at 155a-56a. The Ethics Training summarizes permitted and prohibited political activity and addresses supplementary employment, including the requirement that employees seek approval for supplementary employment. *See* N.T. at 31, R.R. at 156a. The final component of the Ethics Training is an acknowledgment that requires employees to certify that they have read and understood the policies outlined in the training, which acknowledgment cannot be bypassed and which Claimant signed electronically. *See* N.T. at 31, R.R. at 156a; *see also* Employee Training Transcript, R.R. at 239a-42a. In addition to the Ethics Training, Claimant also underwent training on the Work Rules. *See* N.T. at 33, R.R. at 158a; *see also* Employee Training Transcript, R.R. at 239a-42a.[3]

Ms. Shaffer explained that she first became aware of Claimant's situation in May 2022, through a communication with Director Fehr. *See* N.T. at 33, R.R. at 158a. Because Claimant's activity included possible prohibited political activity, it prompted an HR investigation into the matter.[4] *See* N.T. at 33-34, R.R.

---

[3] Claimant stipulated that he participated in all training contained in the Employee Training Transcript. *See* N.T. at 32, R.R. at 157a.

[4] The mechanics of such an investigation first include a review of the policies in question, then fact finding thereon. *See* N.T. at 34, R.R. at 159a. If merited, a PDC is scheduled to provide the employee an opportunity to respond to the evidence adduced. *See* N.T. at 34, R.R. at 159a.

9

at 158a-59a. The investigation revealed that Claimant had not followed Employer's procedures and that he had violated various policies. *See* N.T. at 34, R.R. at 159a. A PDC was scheduled, and Claimant was provided with notice of the alleged violations.[5] *See* N.T. at 34, R.R. at 159a; *see also* PDC Notice, R.R. at 243a. The PDC Notice outlined the allegations identified against Claimant. *See* N.T. at 34, R.R. at 159a; *see also* PDC Notice, R.R. at 243a. The allegations were then discussed at the PDC, and Claimant was afforded an opportunity to respond to the allegations. *See* N.T. at 34-35, R.R. at 159a-60a. Ms. Shaffer testified that Claimant provided insufficient responses to the allegations and was removed from his position on June 27, 2022. *See* N.T. at 35, R.R. at 160a; *see also* Removal Letter, R.R. at 244a-45a. Specifically, Claimant was removed for providing misleading information to his supervisor about approval status to perform political activities on primary election day, his failure to disclose his elected position on his financial disclosure submission, and his failure to request permission to hold an elected position through the supplemental approval process. *See* N.T. at 36, R.R. at 161a; *see also* Removal Letter, R.R. at 244a-45a.

Director Fehr also testified before the referee. *See* N.T. at 37-46, R.R. at 162a-71a. Director Fehr explained that she began working in her position as Director on May 7, 2022. *See* N.T. at 38, R.R. at 163a. Four days later, on May 11, 2022, Claimant, who was one of her subordinates, left her a voicemail with an inquiry about working on election day. *See* N.T. at 38, R.R. at 163a. Director Fehr

---

[5] The notice informed Claimant that he was accused of violating six (6) policies: (1) Department Work Rule II, failure to follow instruction, policy, or procedure; (2) Management Directive 515.18 Amended, Supplementary Employment; (3) Department Supplementary Employment Policy; (4) Guidelines for Political Activity; (5) Inappropriate/Unprofessional Workplace Conduct; and (6) the Code of Conduct. *See* PDC Notice; R.R. at 243a.

10

sent Claimant an email in response to his voicemail. *See* N.T. at 38, R.R. at 163a; *see also* Emails between Director Fehr, Claimant, and Chief Counsel (Email 1), R.R. at 200a-01a. Director Fehr's response to Claimant's email looped Employer's HR and legal offices into the conversation, as Director Fehr was new to the job but knew that certain policies and procedures existed and needed to be followed in reference to political activity. *See* N.T. at 38-39, R.R. at 163a-64a; *see also* Email 1, R.R. at 200a-01a. Claimant responded to the email, as did Chief Counsel, who at that time provided a copy of the Political Activity Guidelines as an attachment for Claimant's review. *See* N.T. at 39, R.R. at 164a; *see also* Email 1, R.R. at 200a-01a. In his response, Chief Counsel did not affirmatively state that Claimant was allowed to participate in the requested political activity. *See* N.T. at 39-40, R.R. at 164a-65a; *see also* Email 1, R.R. at 200a-01a.

Director Fehr also testified that Claimant told HR that he had reached out and spoken with Chief Counsel and been told that there did not seem to be anything preventing him from working the polls, and asking what kind of leave he should employ for that purpose. *See* N.T. at 40 & 43, R.R. at 165a & 168a; *see also* Chief Counsel-HR Email dated July 12, 2022 (Email 3), R.R. at 246a-49a.

Regarding Employer's HR investigation into the matter, Director Fehr provided Claimant with the PDC Notice and was present at the PDC. *See* N.T. at 44, R.R. at 169a. Director Fehr explained that Claimant provided insufficient explanations regarding his political activities at the PDC. *See* N.T. at 44, R.R. at 169a. Following the PDC, Director Fehr conferred with HR and Employer's chain of command regarding a recommendation of what action to take. *See* N.T. at 44, R.R. at 169a. Ultimately, the decision to terminate Claimant's employment was

11

made and Claimant was informed via the Removal Letter. *See* N.T. at 44, R.R. at 169a; *see also* Removal Letter, R.R. at 244a-45a.

Deputy Cheryl Cook also briefly testified on Employer's behalf. *See* N.T. at 62-63, R.R. at 187a-88a. Cook explained that Claimant's explanations for his actions were insufficient and supported a finding of policy violations because the explanations confirmed that Claimant had failed to seek approval for supplementary employment. *See* N.T. at 62-63, R.R. at 187a-88a.

Claimant testified on his own behalf before the referee. *See* N.T. at 48-62, R.R. at 173a-87a. He explained that, in May of 2021, he and his sister noted the absence of a candidate for Minority Inspector on their mail-in ballots, and he suggested that they write his name in as a joke. *See* N.T. at 48-49, R.R. at 173a-74a. Claimant stressed that his write-in vote was a joke and not seriously intended or expected to result in his election to the position of Minority Inspector. *See* N.T. at 48-49 & 52, R.R. at 173a-74a & 177a. He explained that he never campaigned or received any financial contributions for the position and did not even really know what the position entailed. *See* N.T. at 49, 52a & 57, R.R. at 174a, 177a & 182a. Claimant further explained that, after voting, he forgot about the election and was surprised by the Board of Elections' November 2021 notification that he had won. *See* N.T. at 49, R.R. at 174a. Claimant testified that, after receiving notification from the Board of Elections that he had won, he simply considered his election a joke that had gone sideways and again forgot about it. *See* N.T. at 49 & 52, R.R. at 174a & 177a.

Claimant explained that, in April 2022, the Board of Elections sent him an email about reporting to work the polls in the May 2022 election. *See* N.T. at 52, R.R. at 177a. Claimant testified that when the Board of Elections contacted him

12

about the May 2022 election, he attempted to confer with his superiors at Employer regarding the matter to clarify whether he could act as the Minority Inspector. *See* N.T. at 49, R.R. at 174a. Claimant explained that neither Director Fehr nor Chief Counsel was sure whether he could act as the Minority Inspector and that Chief Counsel had to inquire further. *See* N.T. at 49-51, R.R. at 174a-76a. Once Chief Counsel informed him that he could not act as Minority Inspector, Claimant resigned the position via email that same day. *See* N.T. at 50, 52, 56, 60 & 62, R.R. at 175a, 177a, 181a, 185a & 187a. Claimant informed Director Fehr of his resignation from the position and considered the matter resolved and concluded. *See* N.T. at 52, R.R. at 177a.

Claimant testified that he did not knowingly violate Department policy. *See* N.T. at 52, R.R. at 177a. He stated that he did not know he was violating the Political Activity Guidelines and rules at the time he wrote his name in for the Minority Inspector position. *See* N.T. at 52, R.R. at 177a. Claimant conceded that he attended trainings virtually and received the various Department guidelines and policies concerning supplemental employment and political activities and that he was responsible for reading and understanding the policies. *See* N.T. at 48, 53 & 57-58, R.R. at 173a, 178a & 182a-83a. Claimant testified, however, that he did not have a full understanding or appreciation of prohibited political activities. *See* N.T. at 48, R.R. at 173a. Claimant noted in his testimony that the policies required him to seek immediate clarification of issues that were unclear to him. *See* N.T. at 53, R.R. at 178a. Claimant explained that by bringing the matter to the attention of his superiors, he was seeking clarification of the various applicable Employer policies. *See* N.T. at 53, R.R. at 178a.

On cross-examination, Claimant conceded that he did not file a supplementary employment request regarding his election as Minority Inspector or note the position on his financial disclosure forms thereafter. *See* N.T. at 54, R.R. at 179a. He further conceded that he did not tell his superiors that he held the position for six months after the election. *See* N.T. at 55, R.R. at 180a.

Based on this evidence, the Board determined that Employer did not meet its burden of proving that Claimant's actions amounted to willful misconduct for UC purposes, explaining as follows:

> After careful consideration, the Board concludes [E]mployer did not meet its burden to show willful misconduct. The Law is not intended to punish honest mistakes or negligent acts. In this case, [C]laimant, who the Board finds to be credible in all aspects, testified that he applied for the Minority Judge of Election position as a joke. Although he ultimately won the position (with two write-in votes – his own and a family member's), he did not believe that he would be paid for the position, did not campaign or accept financial contributions, did not perform any work in connection with the position, and otherwise forgot about his "victory." He did not consider the matter fully until April of 2022, when he was notified he would need to report for duty for the upcoming primary. Upon receiving that notification, he reached out to his [E]mployer for guidance, and ultimately promptly resigned the position after [E]mployer told him he could not serve in such a position.
>
> [E]mployer argues that [C]laimant committed willful misconduct[] due to his failure to submit the proper forms, to obtain the required approval to serve in that position, and to promptly notify [E]mployer about the position. The Board disagrees. As [C]laimant credibly testified, he wrote his name in as a joke for the position. He forgot about the position, which credibly explains his failure to

14

fill out supplementary employment/financial disclosure forms. Additionally, [C]laimant credibly explained his mistaken, albeit reasonable, belief that the position did not require him to fill out those forms. [C]laimant reached out to [E]mployer about the position, and promptly resigned when informed he could not fulfill the position.

[E]mployer, at the hearing, admitted that it did not immediately recognize that [C]laimant's behavior violated [E]mployer's policies. Rather, it was only after consultation with *HR and legal counsel* that the conclusion was reached that [C]laimant serving in that position would violate [E]mployer's policies. Thus, the Board cannot conclude that [C]laimant, *who is not a lawyer*, committed willful misconduct by applying for a position as a joke, winning the position, and not immediately filling out paperwork about that position when he reasonably assumed he did not need to do so for that position. Furthermore, he resigned the Minority Judge of Election position as soon as he was notified that he could not serve in that position.

The Board does not question [E]mployer's decision to terminate [C]laimant, but the Board cannot conclude that [C]laimant's actions rose to the level of willful misconduct. Accordingly, benefits cannot be denied under Section 402(e) of the Law.

Board Opinion at 3, R.R. at 293a (emphasis in original).

We find no error with the Board's determination. Firstly, while we appreciate that Claimant intentionally voted for himself as a write-in candidate for the Minority Inspector position, the facts as found by the Board illustrated that Claimant did so as a joke and did not in any way expect or intend to win the election. Claimant was unsure of the duties of the Minority Inspector and thought the position to be little more than a glorified poll worker. Upon being informed of his victory,

15

he was mildly amused, but quickly forgot about the position. Although mistaken, Claimant did not think he needed to report or request permission to hold the position of Minority Inspector as supplementary employment. Additionally, when reminded of the position by virtue of the approaching election, he sought clarification from Employer as to whether he was permitted to act as Minority Inspector, and then promptly resigned the post upon learning that he was not. The Board found Claimant's testimony credible and his failures to comply with Employer's policies regarding either political activity or reporting and/or seeking permission for supplementary employment reasonable. It is not for this Court to re-evaluate the Board's evidentiary determinations on appeal. *See Waverly Heights*, 173 A.3d at 1227-28 (noting that this Court is bound by the Board's findings where those findings are supported by substantial evidence). Thus, we find no error in the Board's determination that, under the specific facts of this case, Employer failed to prove that Claimant's actions amounted to willful misconduct for UC benefits purposes.[6] *See id.* at 1228. Likewise, we find no error of law on the Board's part, as the conclusion that Employer failed to prove Claimant's willful misconduct can be logically and reasonably drawn from the evidence in this matter. *See Johnson v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1841 C.D. 2016, filed Jan. 19, 2018),[7] slip op at 8 (noting that "[t]his Court examines the evidence in the light most favorable to [Claimant] as the party [who] prevailed before the Board, giving

---

[6] As a result of our determination that the Board did not err by finding that Employer failed to meet its burden to prove that Claimant's actions amounted to willful misconduct, we need not consider, as the Board did not, whether Claimant proved good cause for his actions. *See Downey.*

[7] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

[Claimant] the benefit of any inferences that can logically and reasonably be drawn from the evidence").

To the extent Employer argues that the Board's factual findings are not supported by substantial evidence, we do not agree. Here, Claimant's testimony, discussed *supra*, covered his actions and intention relating to his election to the Minority Inspector position and his actions thereafter. Claimant's testimony illustrated that: (1) he did not expect or intend to be elected; (2) he thought the position was not one that required him to report to or request permission from Employer to perform; (3) he sought clarification upon being reminded of his obligations; and (4) he resigned promptly upon learning he was not permitted to hold the position. This testimony, which the Board expressly found "to be credible in all aspects," sufficed for the Board to determine as the finder of fact that Employer had not met its burden of proving willful misconduct. *See Waverly Heights*, 173 A.3d at 1227-28; *see also* Board Opinion at 3, R.R. at 293a.

### IV. Conclusion

For the above reasons, we affirm the Board Opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of   :
Agriculture,        :
      Petitioner  :
          :
   v.       :
          :
Unemployment Compensation  :
Board of Review,     : No. 1511 C.D. 2023
      Respondent :

# **O R D E R**

AND NOW, this 4th day of October 2024, the December 6, 2023 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge